### No. C-584

### Frank Bolles v. The People of the State of Colorado

(541 P.2d 80)

Decided October 6, 1975.

Mann and Flair, Roger N. Flair, for petitioner.

Alexander M. Hunter, District Attorney, Peter A. Hofstrom, Deputy, for respondent.

Miller and Gray, P.C., William R. Gray; Alperstein, Plaut and Barnes, P.C., Arnold Alperstein, for The American Civil Liberties Union of Colorado, amicus curiae.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

This case involves the single question of whether subsection (1)(e) of Section 18-9-111,[1] C.R.S. 1973, is overbroad in its proscription and there-

---

[1] The defendant was originally charged under C.R.S. 1963, 40-9-111(1)(e). The subsection was recodified as subsection (1)(e) of Section 18-9-111, C.R.S. 1973.

The subsection, in pertinent part, provides:

"(1) A person commits harassment if, with intent to harass, annoy, or alarm another person, he:

"(e) communicates with a person, anonymously or otherwise by telephone, telegraph, mail, or any other form of communication, in a manner likely to harass or cause alarm; . . . ."

fore facially unconstitutional under the First and Fourteenth Amendments to the United States Constitution and Article II, Section 10 of the Colorado Constitution.

In December of 1973 the defendant, Frank Bolles, as acting president of the Boulder chapter of the Colorado Right to Life Council caused to be mailed to the homes of approximately 2400 Boulder County residents anti-abortion material which was enclosed in a plain envelope. Each piece of mail consisted of a list of twelve points of information regarding abortion and its practice in Boulder County. It also included a color brochure portraying numerous aborted fetuses and one live baby.

As a result, the Boulder County District Attorney charged the defendant with committing the crime of harassment, C.R.S. 1973, 18-9-111(1)(e). The defendant moved to dismiss the charge on the ground that the statute was unconstitutionally vague and overbroad on its face and as applied to his activity. He also contended that the statute violated his right to free exercise of religion as protected by the First Amendment to the United States Constitution.

■ The county court granted the defendant's motion, holding the statute to be facially overbroad, and thus unconstitutional under the First and Fourteenth Amendments to the United States Constitution. The People appealed, and the district court reversed the judgment of the county court. We granted certiorari. The American Civil Liberties Union filed a brief as Amicus Curiae and participated in the oral argument. We reverse the judgment of the district court and hold subsection (1)(e) of section 18-9-111, C.R.S. 1973 facially overbroad and therefore unconstitutional.

I.

■ The first issue is whether the defendant has standing to challenge the statute in question. Because of the posture in which this case comes before us — the district court reversed the county court's grant of a motion to dismiss — we can deal only with the question of whether the statute is so broadly written that no state of facts proven at the trial would breathe life into it. Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court. Not so, however, where, as here, we are dealing with First Amendment protections. *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830; *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600.

In *Broadrick, supra*, the Court noted that in statutes seeking to regulate only speech or written words, claims of facial overbreadth should be entertained as an exception to the general rule. This is because "the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes." *Id.* 413 U.S. at 612; *Bigelow v. Virginia, supra.*

## II.

■ In the First Amendment area, at least, a statute is facially overbroad if it sweeps so comprehensively as to substantially include within its proscriptions constitutionally protected speech. *Broadrick v. Oklahoma, supra; Bigelow v. Virginia, supra.* Therefore, to determine whether the statute before us is overbroad, we must determine whether it seeks to prohibit speech that is beyond the pale of government regulation.

In *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031, the Supreme Court set forth the kind of speech and speech-related activity that a state could — consistent with the First Amendment — make criminal. The Court stated:

"These include the lewd and obscene, the profane, the libelous and the insulting or 'fighting' words — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace."

In *People v. Vaughan,* 183 Colo. 40, 514 P.2d 1318, we elaborated on this when we observed that "the state has an overriding interest in prohibiting conduct or speech which incites others to unlawful conduct or provokes retaliatory actions amounting to a breach of the peace." 514 P.2d 1322. *See also Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430.

■ However, a statute intended to proscribe unprotected activity must not also proscribe activity protected under the First Amendment. As we said in *People v. Vaughan, supra:*

"Recognition of the delicate and vulnerable nature of [the First Amendment] freedoms and the fact that they need breathing space to survive mandates that we give the closest scrutiny to state action which has the effect of curtailing or chilling free expression. Not only must a statute infringing upon expression be justified by an overriding state interest, but such a statute may be applied only where there is a clear and present danger to such interest."

■ In short, in the First Amendment area, a statute must be narrowly drawn to implement legitimate and constitutional legislative purposes.

The statute before us in this case is anything but narrowly drawn. It could, of course, be relied upon to punish for obscene, libelous, riotous communication which is probably constitutionally permissible. Yet the crucial factor is that this statute could also be used to prosecute for communications that cannot be constitutionally proscribed.

To illustrate the overbreadth of this statute, it is useful to first define some of the significant terms used in the statute. According to *Webster's New International Dictionary of the English Language,* (3d ed. Unabridged, 1961), "annoy" means "to irritate with a nettling or exasperating effect." "Nettling" means "to arouse displeasure, impatience, or anger in: provoke, vex." "Alarm" means "to arouse to a sense of danger; to put on the alert; to strike with fear; fill with anxiety as to threaten danger or harm."

If we substitute these definitions in place of the terms used in the statute, we find that one is guilty of the crime of harassment if he intends to "alarm" another person — arouse to a sense of danger — and communicates to that other person in a manner likely to cause alarm. It would therefore be criminal in Colorado to forecast a storm, predict political trends, warn against illnesses, or discuss anything that is of any significance.

So, also, if one has the intent to annoy — to irritate with a nettling or exasperating effect — and he communicates with another in a manner that is likely to cause alarm — to put on the alert — he too is guilty of harassment. The absurdity of this is patently obvious to anyone who envisions our society in anything but a state of languid repose. The First Amendment is made of sterner stuff.

■ It is therefore axiomatic that as citizens, living under the beneficent protection of the First Amendment, we are entitled to robust debate in a free marketplace of ideas. As such, it must be a fundamental truism that a function of free speech under our system of government is to invite dispute. "It may indeed serve its high purpose when it *induces a condition of unrest, creates dissatisfaction with conditions as they are*, or even *stirs people to anger*. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea." *Terminiello v. City of Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed.1131. [Emphasis supplied.] In effect, if unsettling, disturbing, arousing, or annoying communications could be proscribed, or if they could only be conveyed in a manner that would not alarm, the protection of the First Amendment would be a mere shadow indeed.

### III.

■ We are mindful of our pronouncements that whenever possible a statute should be construed as to obviate or reduce any constitutional infirmities. The district court attempted to save the statute from successful constitutional attack by engrafting onto it a statement that it applied only to conduct engaged in for "no legitimate purpose." We think even with such limitation the subsection of the statute in question remains facially invalid.

We again point out that the subsection in question deals with speech. Adding a phrase "without any legitimate purpose" to that subsection injects a vagueness into the statute which cannot withstand First Amendment scrutiny. Such a "limiting construction" disguises the constitutional difficulties of the statute but does nothing to resolve them. A judge or a jury still has to determine whether or not the particular speech of the defendant was "for a legitimate purpose." This delegation of power to judges or juries with no ascertainable standards does not give sufficient breathing room to the constitutionally guaranteed freedoms of speech and press. See Note, *The Void-for-vagueness Doctrine in the Supreme Court*, 109 *U.Pa.L.Rev.* 67 (1960).

The People suggest also that the right of privacy in the home justifies the broad wording of the subsection in question. While we agree that the protection of the privacy of the home, under some circumstances, is a legitimate legislative concern, we cannot, in the face of the pronouncement of the First Amendment which specifically protects the right to communicate, expand the parameters of the penumbral right to privacy, so as to prohibit communication of ideas by mail when the sender has not been requested to refrain from doing so. *See, e.g., Breard v. City of Alexandria, La.,* 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233; *Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513. *Compare Rowan v. United States Post Office Department,* 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736.

Use of the mail to convey one's message no doubt encroaches on the sanctity of the home; however, the intrusion into the recipient's privacy is only minimal since he is not only free to discard at once any mail that he does not wish to receive, but can also ensure that he will not receive any more like it from the sender. *See Rowan v. United States Post Office Department, supra.* This situation can be readily distinguished from that in *Breard, supra.,* where the commercial solicitor, appearing in person, could not be easily turned away, or in *Kovacs, supra.,* where the merciless blare of the soundtruck could not be ignored.

Accordingly, we hold that subsection (1)(e) of section 18-9-111, C.R.S. 1973 is overbroad on its face and unconstitutional under the First and Fourteenth Amendments to the United States Constitution and Article II, Section 10 of the Colorado Constitution.

The judgment of the district court is reversed.