575 P.2d 835 (1978)
VETERANS OF FOREIGN WARS, POST 4264, a non-profit Association, Yampa Valley Cooperative Association, a Colorado Corporation, F. M. Light & Sons, Inc., a Colorado Corporation, Eloise More, d/b/a Dairy King, Donald Brookshire, d/b/a Corner Liquor, Edward Detrich, d/b/a Waffle Shack, on behalf of themselves and as representatives of a class of persons similarly situated, Plaintiffs-Appellants,
v.
CITY OF STEAMBOAT SPRINGS, a Municipality established under the laws of the State of Colorado, Defendant-Appellee.
No. 27587.
Supreme Court of Colorado, En Banc.
February 21, 1978.
Rehearing Denied March 13, 1978.
*838 Sharp, Black & Borden, P.C., Mary Jane Simmons, Steamboat Springs, for plaintiffs-appellants.
Ratcliffe & Chamberlin, Allen T. Ratcliffe, Jr., Dean Link, Steamboat Springs, for defendant-appellee.
ERICKSON, Justice.
The City of Steamboat Springs, a home-rule municipality, adopted a sign code in December of 1973 as part of the city's general zoning ordinance.[1] The facts have been agreed to and are not in issue. The Steamboat Springs' sign code provides comprehensive regulation for all signs, with certain exceptions which are not in issue in this case. No sign, with limited exception, can be erected prior to the acquisition of a city permit, payment of a fee, and compliance with the sign code's regulations. Section 19(E)(2) of the sign code provides that any sign which extends more than three feet into or over public property shall be discontinued by September 1, 1975.
The appellants are a group of persons who own signs which extend more than three feet into or over public property in violation of Section 19(E)(2). The Veterans of Foreign Wars brought this action on behalf of themselves and all other persons affected by Section 19(E)(2), seeking a declaratory judgment that the sign code is unconstitutional and a permanent injunction against its enforcement. Trial to the court resulted in a judgment in favor of Steamboat Springs. We affirm.
The following issues are raised on appeal: (1) Do the appellants possess standing to challenge the sign code as being facially overbroad and vague? If so, (2) Is the sign code facially overbroad and vague? (3) Does the sign code constitute a prior restraint on the exercise of First Amendment rights? (4) Is Section 19(E)(2) a valid exercise of the police power? (5) Are the appellants' rights to the equal protection of the laws violated by Section 19(E)(2)'s requirement that all nonconforming signs must be terminated by September 1, 1975?

I.

Standing
The appellants alleged and presented evidence in support of their contention that the entire sign code was facially invalid because it was overbroad and vague and also constituted a prior restraint upon the exercise of First Amendment rights. The trial court refused to reach the merits of these allegations on the basis that the appellants lacked standing to litigate those issues.
Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be permitted to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the court. However, a limited exception to this principle exists in First Amendment cases. Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); Bolles v. People, 189 Colo.___, 541 P.2d 80 (1975).
A statute which is overbroad is objectionable, because it may discourage or "chill" persons from exercising their First Amendment rights. Such a statute is also invalid because it vests inordinate discretion in those charged with enforcement and administration of its provisions. Courts have, therefore, adopted a more liberal definition of standing in dealing with facial challenges to an overbroad statute on First Amendment grounds.
The United States Supreme Court reviewed the types of cases in which claims of facial overbreadth have been entertained in Broadrick v. Oklahoma, supra. Four broad categories of cases were listed: (1) cases involving statutes which sought to regulate "only spoken words"; (2) cases in which the court thought that rights of association *839 might be burdened; (3) cases in which the statute purported to regulate the time, place, and manner of expressive or communicative conduct; and (4) cases in which expressive conduct required official approval under laws that delegated standardless discretion to local officials resulting in virtually unreviewable restraints on First Amendment rights.
The appellants' allegations concerning the sign code bring this case within the scope of the above cases and require us to address the facial constitutionality of the ordinance without a showing of direct injury. The appellants, therefore, possess standing under the First Amendment exception and are not foreclosed by traditional standing requirements to challenge the sign code. However, because of the result reached in this opinion, reversal is not required as a result of the trial court's ruling on the standing issue.

II.

Overbreadth and Vagueness
We address the appellants' contentions on the merits, notwithstanding the trial court's dismissal on standing, because we consider the questions are of law and not of fact. Considerations of judicial efficiency and economy also warrant this action.
The challenges to Steamboat Springs' sign code must be examined in the light of general principles of zoning law. Zoning ordinances are presumed to be valid, and one assailing them bears the burden of overcoming that presumption by proof that the ordinance is invalid beyond a reasonable doubt. Ford Leasing Development Co. v. Board of County Commissioners, 186 Colo. 418, 528 P.2d 237 (1974); Bird v. City of Colorado Springs, 176 Colo. 32, 489 P.2d 324 (1971); City and County of Denver v. Chuck Ruwart Chevrolet, Inc., 32 Colo.App. 191, 508 P.2d 789 (1973). Where the reasonableness of a zoning ordinance is fairly debatable, it must be upheld. Nopro Co. v. Town of Cherry Hills Village, 180 Colo. 217, 504 P.2d 344 (1972). Zoning ordinances will not be disturbed unless the legislature has exceeded its power or has acted unreasonably. City of Greeley v. Ells, 186 Colo. 352, 527 P.2d 538 (1974).
When reviewing a claim that a statute is overbroad, we must determine whether the ordinance prohibits speech that is beyond the scope of governmental regulation. Bolles v. People, supra. First Amendment concerns arise whenever signs are regulated or prohibited, because signs are by their very nature a means of expression and communication within the meaning of the First Amendment. Commercial speech and more traditional types of speech are both entitled to First Amendment protection. Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); Bigelow v. Virginia, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975).
The appellants initially contend that the sign code defines "sign" so broadly as to include all types of visual communication, including posters and picket signs. Section 2(B)(50) of the sign code, as contained within the city's zoning ordinance, defines "sign" as "an object or device or part thereof situated outdoors or indoors.. . ." Webster's New International Dictionary (2d ed. 1959) defines "situated" as:
"Having a site, situation or location; located, as a town situated on a hill. . ."
We conclude that the sign code regulates only those signs which are affixed in some manner to real property so as to be "situated."
The appellants' overbreadth and vagueness contentions are primarily directed at a general restriction of the sign code contained in Section 19(A)(2):
"Signs shall identify or advertise only interests conducted on the lot of the sign location, unless the Board of Adjustment, upon request, determines that an off-site sign, conforming to the district regulations in which the sign is located, is necessary to promote the interests of the use to which it relates."
*840 The sign code contains the following definitions:

"SignOff Premises. `Off premises sign' means a sign which contains a message unrelated to a business or profession conducted, or a commodity, service or entertainment sold or offered upon the premises which such sign is located and pertaining to a permitted use."

"SignOn Premises. `On premises sign' means a sign directly pertaining to an existing permitted use on the property upon which said sign is located."
It is argued that the sign code is facially invalid, because it (a) effectively prohibits all off-premise signs, and (b) delegates standardless discretion to administrators, because exceptions are permitted by the sign code only if "necessary to promote the interests of the use to which it relates"a vague standard.
The regulation of conduct which touches First Amendment rights requires that we carefully balance the right of Steamboat Springs to exercise its police power against the ordinance's infringement on protected speech. In United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), reh. den., 393 U.S. 900, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968), the Supreme Court set forth several requirements for the regulation of conduct that threatens First Amendment rights. Such regulation is permissible:
"[I]f it is within the constitutional power of the government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. . ." United States v. O'Brien, supra.

The Steamboat Springs' sign ordinance satisfies these four requirements.
First, this regulation is clearly within the city's constitutional power to enact. Home-rule cities, such as Steamboat Springs, are constitutionally granted every power possessed by the General Assembly as to local and municipal matters, unless restricted by the terms of the city's charter. Colo.Const., Art. XX, Sec. 6; City of Greeley v. Ells, supra; Service Oil Co. v. Rhodus, 179 Colo. 335, 500 P.2d 807 (1972); Davis v. City and County of Denver, 140 Colo. 30, 342 P.2d 674 (1959). Zoning is a matter of local concern. City of Greeley v. Ells, supra. No restrictions on Steamboat Springs' police power that would prohibit the enactment of reasonable zoning regulations are contained in the city's charter.
Secondly, the requirement that the regulation furthers an important or substantial governmental interest requires, in the zoning context, that we determine whether the sign code's purpose, and the means adopted to further that purpose, are reasonably related to an important governmental interest. John Donnelly & Sons, Inc. v. Outdoor Advertising Board, 339 N.E.2d 709 (Mass.1975). Steamboat Springs' sign code is contained within the city's comprehensive zoning ordinance whose enumerated purposes include the intent to "secure safety from fire, panic, and other dangers; promote health and the general welfare . . . preserve natural amenities and desirable characteristics of the land while providing for progress."
The city's sign code regulates only those signs which are "visible from any public right-of-way." Section 2(B)(50). Implicit in this regulation is the city's legitimate concern for the safety of vehicular and pedestrian traffic. Distracting signs may serve to break the concentration of those using the roads with resultant loss of life and property. The sign code itself provides that no sign shall be located so as to impair the safety of a moving vehicle by obscuring the driver's vision. Section 19(A)(3).
In addition to the promotion of public safety, the city's sign code was also adopted to promote aesthetic values in the interest of the general welfare. Efforts by cities and towns to enact reasonable regulations designed to preserve and improve their physical environment have long been upheld by courts as being within the legitimate *841 scope of a municipality's police power. Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); John Donnelly & Sons, Inc. v. Outdoor Advertising Board, supra; State v. Diamond Motors, Inc., 50 Haw. 33, 429 P.2d 825 (1967); Oregon City v. Hartke, 240 Or. 35, 400 P.2d 255 (1965). Zoning to preserve the city's natural amenities and desirable characteristics is even an asserted purpose of the city's zoning ordinance of which the sign code is a part. A pleasant and orderly environment is especially important to a resort and vacation oriented community such as Steamboat Springs.
Notwithstanding our conclusion that the purpose of the sign code is directed at the furtherance of legitimate police power interests, the means adopted must be reasonably related to further those interests. In recent years, several courts have upheld district and city-wide prohibitions of off-premise signs as a legitimate exercise of the police power in the face of First Amendment arguments. Donnelly Advertising Corp. of Maryland v. City of Baltimore, 279 Md. 660, 370 A.2d 1127 (1977); Suffolk Outdoor Advertising Co., Inc. v. Hulse, 56 A.D.2d 365, 393 N.Y.S.2d 416 (1977); John Donnelly & Sons, Inc. v. Outdoor Advertising Board, supra; Markham Advertising Co. v. State, 73 Wash.2d 405, 439 P.2d 248 (1968), appeal dismissed for want of a substantial federal question, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 512 (1969), reh. den., 393 U.S. 1112, 89 S.Ct. 854, 21 L.Ed.2d 813 (1969).
In reviewing First Amendment cases dealing with sign regulation, the courts have focused upon the intrusive nature of signs and billboards and the fact that a "captive audience" is required to view such signs. In John Donnelly & Sons, Inc. v. Outdoor Advertising Board, supra, the court declared:
"Further, we note that the present case is analogous to Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949), where the court upheld a prohibition of the use of sound trucks. The town by-laws, as was the case in Kovacs, do not regulate the content of ideas expressed, but rather protect individuals from highly distracting and intrusive communications. It is well established that a `State or municipality may protect individual privacy by enacting reasonable time, place, and manner regulations applicable to all speech irrespective of content.' Erznoznik v. Jacksonville, supra 422 U.S. [205] at 209, 95 S.Ct. [2268] at 2272 [45 L.Ed.2d 125] and cases cited. `To enforce freedom of speech in disregard of the rights of others would be harsh and arbitrary in itself.' Kovacs v. Cooper, supra 336 U.S. at 88, 69 S.Ct. at 454."
Mr. Justice Brandeis quoted the following language in Packer Corp. v. Utah, 285 U.S. 105, 52 S.Ct. 273, 76 L.Ed. 643 (1932):
"`Billboards, street car signs, and placards and such are in a class by themselves * * * Advertisements of this sort are constantly before the eyes of observers on the streets * * * to be seen without the exercise of choice or volition on their part. Other forms of advertising are ordinarily seen as a matter of choice on the part of the observer * * * In the case of newspapers and magazines, there must be some seeking by the one who is to see and read the advertisement. The radio can be turned off, but not so the billboard . . . .'"
We conclude that the regulations adopted by Steamboat Springs to promote the public safety and general welfare are reasonably related to further those legitimate interests.
Thirdly, the governmental interests furthered by the regulations are not related to the suppression of free expression and communication. The regulations are concerned only with the public's safety and general welfare and affect First Amendment rights only secondarily.
Finally, First Amendment rights are imposed upon only to the extent necessary to further the legitimate governmental interests of public safety and general welfare. On-premise signs, regardless of content, are permitted if they conform to the sign code's regulations, such as size and location. The city's classification of on-premise and off-premise signs is reasonable *842 and accommodates the interests of the property owner and the municipality and imposes upon First Amendment rights to a permissible extent. Off-premise signs are not absolutely prohibited, but are permitted if "necessary to promote the interests of the use to which it relates."
We also conclude that the sign code is not void for vagueness. The prohibition of off-premise signs, unless "necessary to promote the interests of the use to which it relates," sets forth sufficient standards to withstand this constitutional challenge. "Necessary" implies that the erection of a sign is essential and indispensable to the use to which it relates. It requires that the administrator of the sign code engage in a good-faith determination to ascertain whether failure to permit a sign will effectively prohibit communication or expression of the message. Time considerations and the urgency of the message are relevant in this determination.

III.

Prior Restraint
Appellants further contend that the sign code constitutes a prior restraint on the exercise of free speech by requiring the acquisition of a permit and the payment of a fee before any sign can be erected. U.S.Const., Amend. I; Colo.Const., Art. II, Sec. 10. This argument fails to recognize the need to strike a reasonable accommodation of the city's legitimate interests and the exercise of First Amendment rights.
The permit process is purely administrative in nature and is intended to insure that only signs which comply with the sign code's valid regulations will be erected. If the permit provision were stricken and the city were permitted to enforce its sign code only after a violation occurred, the city's legitimate interests would not be afforded their proper scope. Signs of any size and character could then be erected in locations which interfered substantially with the public's safety and general welfare. Enforcement of the sign code without the permit provision would depend on complaints or policing which would cause delay and create an additional expense. Furthermore, the interests of persons who intend to erect a sign are also furthered by the permit provisions of the sign code. Applicants can receive city approval prior to the expenditure of time and money in erecting a sign and thus avoid running the risk that their sign may violate the city's regulations.

IV.

Validity of Section 19(E)(2)
The appellants own signs which are regulated by the provisions of Section 19(E)(2):
"E. Signs Extending Into Adjacent Property.
"1. Any marquee or detached sign which extends into or over any property not owned by the sign user shall be discontinued at any time at the discretion of the adjacent property owner in the absence of contractual agreements to the contrary.
"2. Such signs extending into or over public property more than three (3) feet shall be discontinued no later than September 1, 1975."
The free speech arguments made by the appellants in their challenge of Section 19(E)(2) rest upon well established principles concerning the public's right to exercise First Amendment rights on public property.
The appellants, however, overstate the scope of the regulation contained in Section 19(E)(2). The provision does not regulate or prohibit picketing or the exercise of traditional forms of free speech on public property. Section 19(E)(2) merely regulates the extent to which signs can extend into or over public property when affixed to real property. The appellants' First Amendment contentions were, therefore, adequately answered in Part II.
Furthermore, we find that Section 19(E)(2) is a valid exercise of the city's police power. It is reasonably related to public safety and aesthetics (general welfare), both legitimate purposes of the exercise *843 of a municipality's police power. Moreover, the means adopted by the city are reasonably related to further the city's legitimate interests. The conclusion that a sign which extends more than three feet into or over public property constitutes a more serious threat to public safety than does a sign which extends three feet is one properly within the reasonable exercise of the municipality's police power. Aesthetic considerations also justify this regulation.
Our conclusion is consistent with the majority rule which is that a city can exercise its police power to regulate or prohibit signs which extend over public property. Oscar P. Gustafson Co. v. City of Minneapolis, 231 Minn. 271, 42 N.W.2d 809 (1950); 1426 Woodward Ave. Corp. v. Wolff, 312 Mich. 352, 20 N.W.2d 217 (1945); State v. Wightman, 78 Conn. 86, 61 A. 56 (1905).

V.

Equal Protection
The appellants also contend that Section 19(E)(2) violates their right to equal protection of the laws, U.S.Const., Amend. XIV, by providing for different and unequal treatment of nonconforming uses than do other code provisions. Signs which extend more than three feet into or over public property must be abated by September 1, 1975. Section 19(E)(2). Signs which are nonconforming for failure to comply with other regulations, such as size, area, or height, are permitted to remain indefinitely, as long as there is no abandonment, damage, destruction, or obsolescence. Section 19(E)(4).
Every act of classification involves some degree of discrimination and unequal treatment. But the legislative classification will be upheld if it rests upon a real difference and if that difference bears a reasonable relationship to the purpose for which the classification is established.
The essential difference between Section 19(E)(2) and 19(E)(4) nonconforming signs is that the city has concluded that signs which extend over public property more than three feet endanger public safety and aesthetics (general welfare). Regulation of these signs, which requires abatement within twenty months of enactment of the sign code, is reasonably related to the safety and general welfare purposes for which the classification was established. The city can legitimately conclude that signs which extend more than three feet into or over public property present a greater cause for regulation than do signs which are nonconforming for other reasons.
Accordingly, the judgment is affirmed.
NOTES
[1] Steamboat Springs' sign code, enacted in 1973, has since been amended and reenacted as Ordinance No. 480. The provisions of Ordinance No. 480 will be considered on this appeal, since they are substantially similar to those contained in the original ordinance.