Christopher AGUILAR, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

No. 93SC536.

Supreme Court of Colorado, En Banc.

Dec. 19, 1994.

Gerash, Robinson & Miranda, P.C., Todd J. Thompson, Denver, for petitioner.

A. William Ritter, Jr., Dist. Atty., Second Judicial Dist., Everett Engstrom, Deputy Dist. Atty., Denver, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to review *People v. Aguilar*, No. 92CV3614 (Dist.Ct. July 29, 1993), and to determine the constitutionality of the disorderly conduct statute, section 18–9–106(1)(b), 8B C.R.S. (1994 Supp.).

**1.** The applicable section of the statute states:

**18–9–106. Disorderly conduct.** (1) A person commits disorderly conduct if he intentionally, knowingly, or recklessly:

....

(b) Abuses or threatens a person in a public place in an obviously offensive manner; ....

§ 18–9–106(1)(b).

I

Petitioner Christopher Aguilar (Aguilar) worked as a custodian at Kunsmiller Middle School. He was charged with eight counts of disorderly conduct, in violation of section 18–9–106(1)(b).[1] Aguilar moved to dismiss the charges prior to trial on the grounds that the statute was vague, overbroad, and unconstitutional. The county judge denied Aguilar's motion.

Following a bench trial in the county court, Aguilar was found guilty on four of the eight counts based on evidence that he made offensive comments to young female students at the school.[2] Aguilar was sentenced to probation and appealed to the district court, asserting that the statute was vague and overbroad and facially unconstitutional. The district court upheld the constitutionality of the statute and affirmed Aguilar's convictions.

We granted certiorari to determine the validity of Aguilar's claim that the disorderly conduct statute is vague and overbroad. We now hold that the statute is unconstitutionally and facially overbroad and do not address the vagueness issue. Accordingly, we reverse and remand to the district court with directions to vacate and dismiss Aguilar's convictions and sentence for disorderly conduct.

II

A

The district court held that Aguilar lacked standing to challenge the statute as facially overbroad. We disagree. In declining to address the issue of standing in *People v. Janousek*, 871 P.2d 1189 (Colo.1994), we said:

**2.** The county court judge determined that Aguilar said, "Look at all those little ho's," in the presence of two female students. The court interpreted "ho's" to mean "whores" and ruled that the language was obviously offensive. Aguilar was also found to have said to two other female students, "shake them titties," as the students walked to class. The court ruled that this statement was also obviously offensive.

We need not address the standing issue since, in *People v. Batchelor,* 800 P.2d 599, 601 n. 2 (Colo.1990), we determined that the Colorado doctrine of standing for overbreadth challenges is substantially similar to the inquiry into the statute's overbreadth, and that the standing doctrine has become more complex than the overbreadth doctrine.

*Janousek,* 871 P.2d at 1192 n. 8; *see also People v. Batchelor,* 800 P.2d 599, 601 n. 2 (Colo.1990). Aguilar had standing to assert the claim of overbreadth.

## B

■■■ A statute that regulates unprotected speech is overbroad if its prohibitions encroach upon protected communications. *People v. Ryan,* 806 P.2d 935 (Colo.1991). In *Janousek,* we stated:

A facially overbroad statute will be struck down as invalid if it substantially infringes upon constitutionally protected speech.... If a statute regulates conduct and not merely speech, then "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." ... In First Amendment cases, an overbreadth challenge will not void a statute on its face unless the statute substantially chills con-

stitutionally protected expression or activity.

*Janousek,* 871 P.2d at 1193 (citations omitted); *see Ryan,* 806 P.2d at 939; *Bolles v. People,* 189 Colo. 394, 397, 541 P.2d 80, 82 (1975).[3] In determining whether a statute is facially overbroad, it is necessary to examine the extent to which the statute could prohibit speech beyond the reach of governmental regulation. *Whimbush v. People,* 869 P.2d 1245, 1247–48 (Colo.1994). Subject to several limited exceptions, no law abridging freedom of speech may be enacted.[4]

We upheld the constitutionality of section 18–8–306, 8B C.R.S. (1986), against an overbreadth challenge, because the statute neither included constitutionally protected speech within its prohibition nor chilled the exercise of First Amendment rights. *Janousek,* 871 P.2d at 1193. Likewise, in *Batchelor,* the court upheld the constitutionality of section 18–6–403(3)(b), 8B C.R.S. (1986), against overbreadth and vagueness challenges. The statute provided in pertinent part:

(3) A person commits sexual exploitation of a child if, for any purpose, he knowingly:

. . . .

(b) Prepares, arranges for, publishes, produces, promotes, makes, sells, finances, offers, exhibits, advertises, deals in, or distributes any sexually exploitative material....[5]

---

3. The statute at issue in *Bolles* included within the offense of harassment one who "[c]ommunicates with a person, anonymously or otherwise by telephone, telegraph, mail, or any other form of communication, in a manner likely to harass or cause alarm." § 18–9–111(1)(e), 8B C.R.S. (1973). We found the section to be overbroad, stating that, under the harassment statute:

It would therefore be criminal in Colorado to forecast a storm, predict political trends, warn against illnesses, or discuss anything that is of any significance.

So, also, if one has the intent to annoy—to irritate with a nettling or exasperating effect—and he communicates with another in a manner that is likely to cause alarm—to put on the alert—he too is guilty of harassment. The absurdity of this is patently obvious to anyone who envisions our society in anything but a state of languid repose. The First Amendment is made of sterner stuff.

*Bolles,* 189 Colo. at 398, 541 P.2d at 83. The court concluded that "if unsettling, disturbing, arousing, or annoying communications could be

proscribed, or if they could only be conveyed in a manner that would not alarm, the protection of the First Amendment would be a mere shadow indeed." *Id.*

4. Speech that is not protected by the First Amendment may be subject to governmental regulation. *See Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) (obscenity); *Rowan v. United States Post Office Dep't,* 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970) (invasion of substantial privacy interests of the home); *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (incitement); *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (libel); *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (fighting words).

5. Section 18–6–403(2)(j), 8B C.R.S. (1986), defines "sexually exploitative material" as "any photograph, motion picture, videotape, print, negative, slide, or other mechanically, electronically, or chemically reproduced visual material

§ 18–6–403(3)(b). The court rejected the overbreadth challenge to the statute, finding that the statute sufficiently narrowed the scope of its prohibitions to avoid "criminaliz[ing] an intolerable range of constitutionally protected conduct." *Batchelor,* 800 P.2d at 602 (quoting *Osborne v. Ohio,* 495 U.S. 103, 112, 110 S.Ct. 1691, 1697–98, 109 L.Ed.2d 98 (1990)). Because the breadth of the statute's prohibition was limited to displays made "for the purpose of overt sexual gratification or stimulation of one or more of the persons involved," the statute was less likely to prohibit protected speech. *Id.* (quoting § 18–6–403(2)(d), 8B C.R.S. (1986 & 1994 Supp.)).

However, in *Hansen v. People,* 190 Colo. 457, 548 P.2d 1278 (1976), we held that the language of section 40–9–106(1)(a), 12 C.R.S. (1971 Perm.Supp.), the disorderly conduct statute enacted in 1971, did not attempt to limit its application to "fighting words," and was overbroad.

■ In *People v. Smith,* 862 P.2d 939 (Colo.1993), we reviewed the validity of Colorado's harassment statute, section 18–9–111, 8B C.R.S. (1986), finding subsection (1)(g) to be facially overbroad.[6] A statute that restricts speech must be narrowly drawn so as to avoid criminalizing constitutionally protected conduct. *Smith,* 862 P.2d at 941. A state cannot prohibit speech in public places "merely because it is 'offensively coarse,' even if the speech is repeated and is made with the intent to harass, annoy or alarm." *Id.* at 942.

Like the disorderly conduct statute found unconstitutional in *Hansen,* the scope of subsection (1)(g) of the harassment statute was not limited to speech that the state may constitutionally prohibit. *Id.* Because the

which depicts a child engaged in, participating in, observing, or being used for explicit sexual conduct."

6. The statute provided in relevant part:

18–9–111. **Harassment.** (1) A person commits harassment if, with intent to harass, annoy, or alarm another person, he:
....
(g) Makes repeated communications at inconvenient hours or in offensively coarse language; ....
§ 18–9–111(1)(g), 8B C.R.S. (1986).

breadth of the statute's prohibition included protected as well as unprotected speech, the statute was facially overbroad. *Id.*

■ The language of the present disorderly conduct statute is not narrowly tailored to limit its application to fighting words. The statute lacks the limiting language that preserved the constitutionality of the statutes challenged in *Janousek* and *Batchelor.* Because constitutionally protected speech may be threatening,[7] the provision sweeps too broadly in its prohibition of unprotected speech and includes protected speech as well. Even though Aguilar's remarks were offensive, the statute could inhibit open, albeit abusive, debate concerning government officials or any other topic subject to public debate. The statute is therefore overbroad on its face.

### III

■■ If a different construction of section 18–9–106(1)(b) would reduce or eliminate the constitutional infirmity of overbreadth, we should apply it. *Smith,* 862 P.2d at 943; *Bolles,* 189 Colo. at 398, 541 P.2d at 83. If possible, we should employ a limiting construction that preserves the constitutionality of the statute and is not contrary to legislative intent. *Whimbush,* 869 P.2d at 1248; *see also Ryan,* 806 P.2d at 940 ("The key to saving an overbroad statute from its constitutional infirmities is to discover the core of constitutionally unprotected expression to which the statute might be limited."). In *Smith,* we declined to impose a "fighting words" limitation because we found that the General Assembly had already proscribed "fighting words" in another subsection of the statute.[8]

7. *See Whimbush,* 869 P.2d at 1248 (stating that "not all threats fall outside the scope of protected speech"); *see also NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982) (involving consumer boycotts and the "threat" of social ostracism).

8. Section 18–9–111(1)(h), 8B C.R.S. (1986), included in the offense of harassment a person who "[r]epeatedly insults, taunts, or challenges another in a manner likely to provoke a violent or disorderly response." This subsection was later construed to proscribe "fighting words." *People ex rel. VanMeveren v. County Court,* 191

The disorderly conduct statute was enacted in 1971. Ch. 121, sec. 1, § 40–9–106, 1971 Colo.Sess.Laws 388, 467.[9] In 1976, however, we held that subsection (1)(a) of the statute was facially overbroad and refused to apply a "fighting words" limitation to the statute because the General Assembly had omitted the "fighting words" language. *Hansen*, 190 Colo. at 461–62, 548 P.2d at 1282. After *Hansen* was decided, the General Assembly amended section 18–9–106(1)(a) of the disorderly conduct statute by expressly including a "fighting words" limitation.[10]

In explaining the proposed change to the disorderly conduct statute, Charles Pike of the Statutory Revision Committee stated:

> [T]hat's to pick up the words that were used previously. In other words, it's disorderly conduct if an individual makes the coarse and obviously offensive utterance, gesture, or display in a public place. The problem with those words, without the further qualification that those utterances, gestures, or displays tend to incite an immediate breach of the peace is, it's vague. In other words, the international symbol of good faith could be interpreted as fitting under the disorderly conduct statute unless it's done in such a fashion as to incite an immediate breach of the peace. That, the court felt, was the necessary ingredient to make it constitutional.

Colo. 201, 551 P.2d 716 (1976). Because subsection (h) was held to proscribe "fighting words," we held that "it is obvious that subsection (g) of the same statute is designed to reach other types of communications." *Smith*, 862 P.2d at 943.

9. The applicable sections of the statute read:

> **40–9–106. Disorderly conduct.** (1) A person commits disorderly conduct if he intentionally, knowingly, or recklessly:
> (a) Makes a coarse and obviously offensive utterance, gesture, or display in a public place; or
> (b) Abuses or threatens a person in a public place in an obviously offensive manner; ....
> § 40–9–106(1), 12 C.R.S. (1971 Perm.Supp.).

The 1971 version of the statute was modelled after a proposed Texas statute. The Texas proposal, subsequently enacted in 1974, stated in part:

> (a) A person commits an offense if he intentionally or knowingly:
> ....

*Hearing on S.B. 154 Before the Senate Committee on Judiciary*, 53d Gen. Assembly, 1st Reg. Sess. (hearing tape M1T–81, January 7, 1981, at 2:01 p.m.). A member of the committee questioned whether liability would arise if a victim passively accepted an expression of ill will, rather than rioting and inciting an immediate breach of the peace. Pike confirmed the narrow scope of the language, stating that "[t]here has to be some immediate breach of the peace that would result." *Hearing on S.B. 154*, (hearing tape M1T–81, January 7, 1981, at 2:03 p.m.).

The narrow scope of the "fighting words" exception added to section 18–9–106(1)(a) illustrates the specific concern of the General Assembly in remedying the statute. The General Assembly failed to include a "fighting words" exception in section (1)(b), however. Section (1)(b) of the statute suffers from the same overbreadth as the pre-*Hansen* version of section (1)(a). Because the General Assembly only imposed a "fighting words" limitation on section (1)(a), no limiting construction restricts section (1)(b).

## IV

We hold that section 18–9–106(1)(b) of the disorderly conduct statute is facially overbroad. Accordingly, we reverse and remand this case to the district court with directions

> (2) makes an offensive gesture or display in a public place, *and the gesture or display tends to incite an immediate breach of the peace;*
> ....
> (4) abuses or threatens a person in a public place in an obviously offensive manner.

Tex.Penal Code Ann. §§ 42.01(a)(2) and (4) (West 1974) (emphasis added). The Colorado General Assembly failed to include the language bringing the statute within the "fighting words" exception. Because of this omission, the *Hansen* court refused to impose such a limitation upon the application of the statute.

10. Ch. 227, sec. 1, § 18–9–106, 1981 Colo.Sess. Laws 1010. Subsection (1)(a) has remained unchanged since the revision, and states that:

> (1) A person commits disorderly conduct if he intentionally, knowingly, or recklessly:
> (a) Makes a coarse and obviously offensive utterance, gesture, or display in a public place *and the utterance, gesture, or display tends to incite an immediate breach of the peace;* ....
> § 18–9–106, 8B C.R.S. (1986) (emphasis added).

to vacate and dismiss Aguilar's convictions and sentence for disorderly conduct.