## No. 13,055.

### Bearman *v.* The People.
(16 P. [2d] 425)

Decided October 31, 1932. Rehearing denied November 28, 1932.

Mr. W. Penn Collins, Mr. Guy D. Duncan, Mr. J. H. Richard, for plaintiff in error.

Mr. Clarence L. Ireland, Attorney General, Mr. Wallace S. Porth, Assistant, for the people.

*En Banc.*

Mr. Justice Butler delivered the opinion of the court.

L. Bearman was found guilty of criminal libel, and was sentenced to imprisonment in the penitentiary for not less than eleven months nor more than twelve months. He seeks a reversal of the judgment.

1. One of the questions presented concerns the right of a defendant in a prosecution for criminal libel to introduce evidence tending to show absence of malice on his part.

(1) In civil actions for damages for a publication libelous per se, malice is presumed, and no burden rests upon the plaintiff to prove express malice. The defendant in such an action is permitted to introduce evidence to negative malice in two situations only: If the publication is one of qualified privilege, it is necessary for the plaintiff, in order to succeed, to prove actual malice on the part of the defendant; and the defendant, of course, may introduce evidence to the contrary. Where the plaintiff seeks exemplary damages, he can recover such damages only upon proof of actual malice upon the part of the defendant, or a reckless disregard by him of the plaintiff's rights and feelings (C. L. §6307); and in such case, the defendant, not as a justification, but for the sole purpose of mitigating exemplary damages, may introduce evidence to the contrary. Unless one of these situations exist, the defendant in a civil action for damages cannot introduce such evidence. In *Republican Publishing Co. v. Conroy,* 5 Colo. App. 262, 38 Pac. 423, it is said (p. 266): "In libel the law implies malice from the fact of the publication, but no actual malice may exist. The publication may be made in a belief of its truth, and without any desire or intention to do the aggrieved party an injury."

(2) In a criminal case, exemplary damages have no place. After the defendant is found guilty, circumstances tending to negative express malice may be considered by the judge in mitigation of the penalty. In at

least one state the jury determines the penalty and in such case evidence of the defendant's good faith and want of malice is admissible at the trial, not in justification, but to enable the jury to determine what penalty to impose. *Alsup v. State,* 91 Tex. Cr. 224, 238 S. W. 667. Such is not the case in Colorado, where the court instead of the jury determines the penalty to be imposed. In a criminal case, where the publication is qualifiedly privileged, the defendant cannot be convicted unless the existence of actual malice on his part is found by the jury, from the evidence, beyond a reasonable doubt; and in such cases, as in civil actions, the defendant may introduce evidence to disprove malice. Where, however, the publication is libelous per se and is not qualifiedly privileged, no such evidence is admissible; the rule in this respect being the same in criminal cases as it is in civil actions. Discussing malice in criminal cases, Newell says: "It is not necessary, to render an act malicious, that the party be actuated by a feeling of hatred or ill-will toward the individual, or that he entertain and pursue any general bad purpose or design. On the contrary, he may be actuated by a general good purpose, and have a real and sincere design to bring about a reformation of matters; but if in pursuing that design he wilfully inflicts a wrong on others which is not warranted by law, such act is malicious." Newell, Slander and Libel (4th Ed.), §274. Chief Justice Shaw uses similar language in *Commonwealth v. Snelling,* 15 Pick. (Mass.) 337. "In libel and slander suits, where no question of privilege arises, it is quite sufficient if malice in law is shown, although if both these elements appear the existence of the former would probably be taken into account in awarding punishment * * *." Newell, §276. In 37 C. J., p. 141, the law in criminal cases is stated thus: "Defendant cannot show in defense current rumors or suspicions, * * * , belief in the truth, probable grounds for his belief, an honest mistake in the facts, an innocent intention, * * *." In 8 Ency. Ev., p. 196, it is said: "Unless the

occasion were privileged, this presumption of legal malice is conclusive in so far as such malice is necessary to support the action, and evidence of the defendant's good motives and intention is not competent to defeat a recovery, but only to mitigate exemplary damages by negativing actual malice, or in support of a claim of privilege.'' And at page 197: ''This presumption of malice applies to prosecutions for criminal libel or slander.'' And in *State v. Brady,* 44 Kan. 435, 24 Pac. 948, it is said: ''In prosecutions for libel, malice is inferred from the nature of the charge, and, when the publishing of words libelous *per se* is once proven, malice is inferred, as a person is presumed to have intended the consequences of his own acts. * * * The want of actual intent to vilify is no excuse for a libel; and if a man deems that to be right which the law pronounces wrong, the mistake does not free him from guilt.'' And see: *Alsup v. State,* 91 Tex. Cr. 224, 238 S. W. 667; *State v. Mason,* 26 Ore. 273, 38 Pac. 130; *State v. Wait,* 44 Kan. 310, 24 Pac. 354; *State v. Cooper,* 138 Ia. 516, 116 N. W. 691; *Richardson v. State,* 66 Md. 205, 7 Atl. 43.

▌ (3) Bearman's counsel claim that the publication was qualifiedly privileged; that the question of express malice therefore was an issue to be submitted to the jury, and that the offered evidence tending to show good faith should have been received. ''A communication made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contains incriminatory matter, which, without this privilege, would be slanderous and actionable; and this, though the duty be not a legal one, but only a moral or social duty of imperfect application [obligation].'' *Melcher v. Beeler,* 48 Colo. 233, 241, 110 Pac. 181. But the privilege, if abused, is lost. ''Generally, the privilege may be lost if defendant, in regard to the persons to whom the publication is made, goes beyond the limits which his own

protection or his duty requires. The privilege is lost if strangers to the privileged occasion were present by the invitation or design of defendant." 36 C. J. 1248.

The publication involved in this case was a bitter attack upon Dr. Bronfin and others. It accused Dr. Bronfin of criminal and immoral acts in connection with his management of two Jewish hospitals, which accusations the jury found to be false. The communication was in the form of an open letter addressed to the president of the National Jewish Hospital for Consumptives. Instead of confining the communication to the officers of that institution, and others (if any there were) having an interest or duty with reference to the matter, Bearman, according to his admission under oath, distributed 10,000 printed copies. Part of them he sent by mail and part he personally placed upon doorsteps. He knew some of the persons at whose houses he left them, but most of them, he says, he did not know. These facts were not only not disputed but were established by Bearman's own testimony. As a matter of law, in such circumstances, the qualified privilege, if any existed prima facie, was lost by such excessive publication. Therefore, there being no qualified privilege in the case, the evidence offered by Bearman to negative malice was properly rejected, as we have shown in another part of this opinion.

2. The publication charged not only Dr. Bronfin, but other persons, with serious misconduct; indeed, it was a general attack upon those concerned in the management of the two hospitals, and also upon courts and insanity experts.

 (1) It is said that the indictment is bad for duplicity, in that in one count it charges that Bearman libeled several persons. The objection results from a failure to note the distinction between civil actions and criminal prosecutions for libel. The purpose of the former is to recover damages for injury to the reputation of an individual; whereas the law makes the publication of a libel a crime, not because of injury to the reputation of

492

an individual, but because such publication tends to affect injuriously the peace and good order of society. Where, as in the present instance, the publication is a single act, it constitutes one offense, even though it is a libel on two or more persons, and may be charged in a single count without rendering it bad for duplicity. 1 Bishop's New Criminal Procedure, §437; 37 C. J. 147; *State v. Hosmer*, 72 Ore. 57, 142 Pac. 581; *Tracy v. Commonwealth*, 87 Ky. 578, 9 S. W. 822; *State v. Hoskins*, 60 Minn. 168, 62 N. W. 270; *State v. Poulson* (N. J. Quar. Sess.), 141 Atl. 165. And see *Crane v. State*, 14 Okla. Cr. 30, 166 Pac. 1110, concerning informations for libel against a class. Although the indictment contained parts of the libel that concerned other persons, the libel actually charged was the libel on Dr. Bronfin. No doubt it would have been better practice to omit from the indictment those parts of the open letter that did not concern Dr. Bronfin. But we cannot say that their inclusion prejudiced the substantial rights of Bearman on the merits. C. L. §7103. There was no error in denying the motion to quash, attacking the indictment on this ground.

2. For reasons similar to those given in subdivision (1), the objection that the indictment is bad for duplicity, in that in one count it alleges that Bearman charged Dr. Bronfin with several and distinct acts of misconduct committed by him at different times, is without merit. The motion to quash the indictment on the ground of duplicity was properly denied.

3. Bearman moved to strike from the indictment the quoted parts of the open letter that do not relate to Dr. Bronfin. The motion was denied. It properly could have been granted, but we do not think that its denial was prejudicial to the substantial rights of Bearman on the merits. C. L. §7103. We cannot suppose that the jury were misled into believing that those parts of the open letter that charged other persons with misconduct were intended to apply to Dr. Bronfin. In our opinion, the ruling on this motion was not reversible error.

■ 4. It is said that the court erred in admitting in evidence the open letter in its entirety, because it contained libelous matters that were not included in the indictment. This was not error. All constituted one document; all were parts of the same transaction. The charges made by Bearman against persons other than Dr. Bronfin gave character to those relating to Dr. Bronfin. *Tracy v. Commonwealth, supra; Bain v. State,* 38 Tex. Cr. 635, 44 S. W. 518; 8 Ency. Ev., p. 265.

■ 5. Section 10, article 2, Colorado Constitution, provides: "In all suits and prosecutions for libel, the truth thereof may be given in evidence." Section 6830, Compiled Laws, says that the truth may be given in evidence "in justification." Bearman's counsel contend that these provisions were disregarded by the trial court. If that is so, the judgment must be reversed as a matter of course.

Counsel say that "at folios 1084-1090 the court rejected defendant's proofs of the truth of certain alleged libelous matter contained in the indictment and in exhibit A"— the open letter. Turning to those folios in the transcript we find this question put to Bearman by his counsel: "State what case you referred to when you mentioned that the medical doctors, or the question that if the medical doctors can have a person declared insane while a concubine is being kept in the home, or words to that effect, * * *." This was objected to. The court: "Sustained. You can ask whether he intended to mean Dr. Bronfin by that statement, if you want to, Mr. Duncan." Counsel thereupon contended that the general statement in the indictment that the matters published by Bearman were a libel of and concerning Dr. Bronfin entitled Bearman to prove the truth of the charge. But the question did not call for an answer tending to show that Dr. Bronfin caused, or participated in an attempt to cause, any person to be declared insane; nor was there any offer of evidence tending to show that he did.

■ But it is said that certain papers offered and

rejected tended to prove the truth of that charge. Those papers (exhibits 37 to 52, inclusive) were from the files of the county court in a certain proceeding (No. 39255) instituted for the purpose of having a certain woman admitted to the psychopathic hospital. We find a bundle of exhibits fastened together; the exhibits in question, however, are not among them. But in arguing his objection to the introduction of the exhibits, the district attorney stated, and the statement was not challenged, that nowhere in the papers did the name of Dr. Bronfin appear. The doctors appointed by the court as lunacy commissioners were men of high standing in the profession, and the guardian ad litem appointed by the court was a lawyer of high repute. The trial court's action in sustaining the district attorney's objection to the introduction of these exhibits was not error.

6. Complaint is made that Bearman has been held in jail an unreasonable time without being permitted to furnish bail. The facts are these: On February 23, 1932, Bearman sued out a writ of error, and, without complying with our rule 22, applied to be released on bail. The application was denied, with leave to renew upon compliance with that rule. On February 26 he renewed his application, and it was denied because the showing was not considered sufficient. On March 15 the defendant filed a paper entitled "Petition for rehearing on application for bail." It was stricken from the files as contemptuous. Nevertheless, in order that the truth or falsity of the statements contained in the supporting affidavit made by Bearman might be ascertained, the matter was referred to the trial judge with power to investigate and to allow or deny bail as the facts found by him warranted. After due investigation of the facts, the trial judge denied Bearman's application to be released on bail. The inference is that the trial judge found the statements to be false. His action was approved by this court. During all this time no transcript of record was on file to enable us to determine the nature of the evi-

dence; no assignments of error, no application for supersedeas. Instead of applying for a supersedeas promptly, Bearman's counsel, on April 14, requested and was granted an extension of time to June 1 to file the record and an application for supersedeas. At their request, other extensions of time were granted; one to June 20, another to July 20, another to August 1. Not until September 15 did Bearman's counsel file the record, the assignments of error, and the application for supersedeas, supported by a brief. On September 22 the attorney general filed his answering brief. Although Bearman continued to be in jail, his counsel, instead of promptly filing a reply brief, applied, on October 8, for an extension of time to file the same. This decision is rendered within nine days after their reply brief was lodged with the clerk of this court. If there had not been such extraordinary delay in presenting this application to the court, the decision would have been rendered months ago.

We find no reversible error in the record. The judg-
is affirmed.