**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellant,**

**v.**

**Dennis Edward RYAN,**
**Defendant–Appellee.**

**No. 89SA497.**

Supreme Court of Colorado,
En Banc.

March 11, 1991.

(1) A person who shall knowingly publish or disseminate, either by written instrument, sign, pictures, or the like, any statement or object tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue, or reputation or expose the natural defects of one who is alive, and thereby to expose him to public hatred, contempt, or ridicule, commits criminal libel.

(2) It shall be an affirmative defense that the publication was true, except libels tending to blacken the memory of the dead and libels tending to expose the natural defects of the living.

(3) Criminal libel is a class 5 felony.[1]

The defendant was charged with criminal libel for mailing copies of a fictitious "Wanted" poster to several businesses, bars, and a local trailer park in Fort Collins, Colorado. The poster, which pictured and named the libel victim, stated that the victim was wanted for "fraud, conspiricy [sic] to commit fraud, various flimflam schemes, spouse abuse, child abuse-neglect, sex abuse, abuse of the elderly, prostitution, assault, larceny, theft of services, wage chiseling, [and] breach of contract." The poster further stated that the victim "frequents local bars in company of men with longest hair and/or best contraband," was "86'd from bars in two states for soliciting multiple male customers," "often masquerades as 'peace worker', day care worker, cook, waitress, dancer," "has harbored various forms of VD," and is at "high risk for AIDS." In addition, the poster set forth the victim's age, hair color, weight, height, eye color, birth date, and residence, and offered a $3,000 reward for "information leading to the criminal or civil prosecution" of the victim. Finally, the poster requested that inquiries and information be sent to a post office box in Iowa City, Iowa.

The victim told Officer Kenneth Murray from the Fort Collins Police Department that she had previously dated the defendant, who resided in Iowa City, Iowa. She stated that after their relationship ended,

Stuart A. VanMeveren, Dist. Atty., Loren B. Schall, Asst. Dist. Atty., Steven K. Sharpe and Jolene L. Carman, Deputy Dist. Attys., Fort Collins, for plaintiff-appellant.

Frey, Lach & Michaels, P.C., John P. Frey, Hale, Smith & Williams, P.C., Michael D. Liggett, Fort Collins, for defendant-appellee.

Justice VOLLACK delivered the Opinion of the Court.

The People appeal the trial court's dismissal of the information filed against the defendant, Dennis Ryan, and its ruling that Colorado's criminal libel statute, § 18–13–105, 8B C.R.S. (1986), is facially unconstitutional. We reverse and remand with instructions.

### I.

On April 13, 1989, the defendant was charged with criminal libel in violation of section 18–13–105, 8B C.R.S. (1986). That section provides:

---

**1.** Effective July 1, 1989, subsection (3) was amended, changing criminal libel to a class 6 felony. Ch. 148, sec. 102, § 18–13–105, 1989 Colo.Sess.Laws 820, 843.

the defendant inundated her with hate mail. He also mailed a pair of the victim's eyeglasses to her, but had booby-trapped the glasses in an apparent attempt to harm the victim. At the preliminary hearing on September 6, 1989, Officer Murray testified that the post office box on the poster was listed to the defendant. He further testified that no records existed indicating that the victim had been involved in any illegal activities.

■ At the conclusion of the preliminary hearing, the trial court bound the case over for trial upon finding probable cause to believe that the defendant had committed the crime charged. Thereafter, the defendant filed a motion to dismiss in a pretrial proceeding, contending that the criminal libel statute was unconstitutional. The trial court granted the defendant's motion, finding that the statute was unconstitutionally overbroad because it lacked an "actual malice" requirement for false statements about public officials. Without this standard, the statute could inhibit criticism of public officials, which is protected expression under the first and fourteenth amendments to the United States Constitution[2] and article II, section 10, of the Colorado Constitution.[3] The trial court further stated that although the statute could be applied constitutionally to the defendant's conduct, the defendant nevertheless had standing to challenge section 18–13–105's facial overbreadth because it threatened to chill first amendment expression by third parties.[4] Thus, the trial court invalidated the entire statute on its face as unconstitutionally overbroad.

## II.

On appeal, the defendant contends that the trial court was correct in ruling that section 18–13–105's lack of an "actual malice" standard renders the statute overbroad, thereby requiring invalidation of the entire statute in all of its applications.[5] We disagree.

## A.

■ We first consider the category of expression that is protected, as well as that which is unprotected, by the first amendment in the area of libel. Originally, libel against anyone was believed to be outside the scope of first amendment protection. The United States Supreme Court enunciated this long-held view in *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), when it stated:

[I]t is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, *the libelous,* and the insulting or "fighting" words—those

2. Amendment I to the United States Constitution provides in pertinent part: "Congress shall make no law ... abridging the freedom of speech, or of the press...." This guarantee applies to the states through the fourteenth amendment of the Constitution. *Douglas v. City of Jeannette,* 319 U.S. 157, 162, 63 S.Ct. 877, 880, 87 L.Ed. 1324 (1943).

3. Article II, § 10, of the Colorado Constitution states:
   No law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty; and in all suits and prosecutions for libel the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the fact.

4. In first amendment cases, a defendant may challenge a statute on its face when it threatens to deter third parties from engaging in protected expression, even though the statute could be applied constitutionally to the defendant. *See, e.g., Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 503, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985); *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973); *City of Englewood v. Hammes,* 671 P.2d 947, 950 (Colo.1983). We decline, however, to address the issue of the defendant's standing because our partial invalidation of § 18–13–105 renders that issue moot. *See infra,* part II, section C, of this opinion.

5. The defendant concedes, however, that § 18–13–105 is constitutional as it applies to his conduct.

which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.

*Id.* at 571–72, 62 S.Ct. at 768–69 (emphasis added). In 1964, the Court rejected the view that all libel was beyond first amendment protection when it began to define the constitutional limitations of state libel laws as they pertained to defamatory statements about public officials. In *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Court established the rule that a defamatory false statement about a public official was not actionable for damages unless it was made with "actual malice"—that is, unless the defendant knew that the defamatory statement was false, or acted in reckless disregard of the truth. *Id.* at 279–80, 84 S.Ct. at 725–26.[6] Its conviction that speech about public affairs was essential to the democratic process motivated the *New York Times* Court to formulate a rule which reflected the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Id.* at 270, 84 S.Ct. at 721.[7]

The Court later extended the application of the *New York Times* "actual malice" rule to cases where criminal sanctions were imposed for criticism of the official conduct of public officials. *Garrison v. State of Louisiana*, 379 U.S. 64, 67, 85 S.Ct. 209, 212, 13 L.Ed.2d 125 (1964). Despite the separate interests served by civil and criminal libel statutes, at least historically,[8] the Court concluded that the same constitutional limitations applied where defamation of public officials was concerned. *Id.* at 67, 74, 85 S.Ct. at 212, 215. Today, in civil or criminal libel actions brought by public officials, truth is an absolute defense, and only false statements made with "actual malice" are subject to sanctions. *See id.* at 74, 85 S.Ct. at 215.

In *Garrison*, however, the Court specifically noted that its development of the *New York Times* rule in no way impacted the area of purely private libels. *Id.* at 72 n. 8, 85 S.Ct. at 215 n. 8. Following *New York Times* and *Garrison*, the Court indeed recognized that the first amendment justification for the "actual malice" rule was reduced when a defamer libeled a private person. In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Court refused to extend the *New York Times* "actual malice" standard to media defamation of a private individual on a matter of public concern. Specifically, the Court held that private individuals, as opposed to public officials, need not prove "actual malice" to recover actual damages, although "actual malice" must be shown to recover presumed or punitive damages.

**6.** The *New York Times* "actual malice" standard is distinguishable from common law malice, which meant spite or ill will. L. Tribe, *American Constitutional Law* § 12–12, at 864 n. 21 (2d ed. 1988).

**7.** The *New York Times* privilege was later applied to publications about public figures so that those who thrust themselves into the public arena had no redress for defamatory false statements without proof of actual malice. *See Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

**8.** The historical rationale for the criminal punishment of libel, which is still used today, was that libels could be penalized by the state because they tended to create breaches of the peace when the libel victim or his friends

sought revenge on the libeler. At common law, truth was no defense, for the truth was even more likely to cause breaches of the peace. Kelly, *Criminal Libel and Free Speech*, 6 Kan.L. Rev. 295, 301 (1958). *See also Bearman v. People*, 91 Colo. 486, 491–92, 16 P.2d 425, 427 (1932) ("[T]he law makes the publication of a libel a crime, not because of injury to the reputation of an individual, but because such publication tends to affect injuriously the peace and good order of society."). While criminal action was used to preserve the peace, civil action was the more popular remedy, as it is today, because it provided compensation for damage to the reputation of the person defamed. Kelly, *supra,* at 299.

*Id.* at 348–49, 94 S.Ct. at 3011–12. Instead, the states were given the latitude to define for themselves the appropriate standard of liability for a media defendant that injures a private person's reputation with defamatory falsehoods, so long as liability is not imposed without fault. *Id.* at 345–47, 94 S.Ct. at 3009–10. The Court reasoned that private individuals were more vulnerable to injury given their limited opportunities to counteract false statements. Moreover, unlike public officials, private persons do not voluntarily expose themselves to the increased risk of injury from defamatory falsehoods and are therefore more deserving of recovery. *Id.* at 344–45, 94 S.Ct. at 3009–10. In *Dun & Bradstreet v. Greenmoss Builders,* 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985), the Court addressed whether the *Gertz* rule applied when the defamatory false statement did not involve a matter of public concern. The Court held that, in light of the "reduced constitutional value" of speech on purely private matters, presumed or punitive damages may be awarded for such statements, even absent a showing of "actual malice." *Id.* at 761, 105 S.Ct. at 2946. The Court has thus recognized that purely private defamation is of less first amendment concern because it "has little to do with the political ends of a self-governing society. The imposition of liability for private defamation does not abridge the freedom of public speech or any other freedom protected by the First Amendment." *New York Times,* 376 U.S. at 301–02, 84 S.Ct. at 737–38 (Goldberg, J., concurring).

▇ In accordance with the latitude that *Gertz* bestowed upon the states in the area of private defamation, this court has held that, in a purely private context, the balance should be struck in favor of the state's interest in protecting its private citizens from injury by false statements. *See Rowe v. Metz,* 195 Colo. 424, 426, 579 P.2d 83, 85 (1978). Applying this rationale to section 18–13–105, it is inappropriate to require that defamatory false statements must be made with "actual malice" in situations, such as the present case, where one private person disseminates defamatory statements about another private individual in the victim's community. Rather, in a purely private context, a less restrictive culpability standard may be used to meet the state's legitimate interest in controlling constitutionally unprotected conduct injurious to its citizens. Thus, section 18–13–105 can be applied constitutionally to private defamers who "knowingly publish or disseminate ... any statement or object tending ... to impeach the honesty, integrity, virtue, or reputation" of a private individual. § 18–13–105(1).

### B.

We next consider the defendant's contention that section 18–13–105 must be invalidated in its entirety because it criminalizes constitutionally protected criticism of public officials on matters of public concern, as well as constitutionally unprotected libel in the private context, such as that engaged in by the defendant.

▇ A statute is facially overbroad if it sweeps within its reach constitutionally protected, as well as unprotected, activities. *Bolles v. People,* 189 Colo. 394, 397, 541 P.2d 80, 82 (1975). A facially overbroad statute may be struck down as invalid when it threatens to deter individuals from engaging in activities that are protected by the first amendment. In recognition of the state's interest in controlling harmful, constitutionally unprotected conduct, the complete invalidation of an overly broad statute is considered "strong medicine" to be employed cautiously and "only as a last resort." *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973); *Marco Lounge, Inc. v. City of Federal Heights,* 625 P.2d 982, 985 (Colo. 1981). Hence, overbreadth scrutiny is necessarily controlled by the rule that a law should not be voided on its face unless its "chilling effect" on constitutionally protected activity is substantial. *See, e.g., Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 503, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985); *New York v. Ferber,* 458 U.S. 747, 771, 102 S.Ct. 3348, 3362, 73 L.Ed.2d 1113 (1982); *Broadrick,* 413 U.S. at 615, 93 S.Ct. at 2917. If a statute is not substantially

overbroad, then whatever overbreadth may exist should be resolved on a case-by-case basis. *Broadrick*, 413 U.S. at 615–16, 93 S.Ct. at 2917–18; *May v. People*, 636 P.2d 672, 676 (Colo.1981).

■ It is rare, however, that a substantially overbroad statute will be invalidated *in toto* when partial invalidation will rid the statute of the constitutional infirmity of overbreadth. *See Brockett*, 472 U.S. at 504, 105 S.Ct. at 2802. The Court acknowledged this practice in *Broadrick* when it stated that the enforcement of an overly broad statute "is totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Broadrick*, 413 U.S. at 613, 93 S.Ct. at 2916.[9] Moreover, the Court has "long respected the state Supreme Courts' ability to narrow overbroad statutes so as to limit the statute's scope to unprotected conduct." *Osborne v. Ohio*, ── U.S. ──, 110 S.Ct. 1691, 1702, 109 L.Ed.2d 98 (1990). *See also Ferber*, 458 U.S. at 769 n. 24, 102 S.Ct. at 3361 n. 24 (when dealing with a statute challenged as overbroad, state courts are free to construe the statute to avoid constitutional problems when it is subject to a limiting construction). The key to saving an overbroad statute from its constitutional infirmities is to discover the core of constitutionally unprotected expression to which

the statute might be limited. *See Houston v. Hill*, 482 U.S. 451, 468, 107 S.Ct. 2502, 2513, 96 L.Ed.2d 398 (1987).[10]

We recognize that section 18–13–105's lack of an "actual malice" standard threatens to deter a substantial amount of expression protected by the first amendment. We find, however, that the determinate rules developed by the United States Supreme Court in the area of libel allow us to save the statute through partial invalidation.

### C.

■ From the United States Supreme Court's pronouncements concerning libel we discern a precise category of protected conduct that falls outside of the legitimate sweep of section 18–13–105. That category consists of libelous statements about public officials or public figures involving matters of public concern. This category of constitutionally protected conduct gives us a clear line by which to distinguish the statute's constitutional and unconstitutional applications. We therefore hold that section 18–13–105 is invalid only insofar as it reaches constitutionally protected statements about public officials or public figures on matters of public concern. Our partial invalidation, however, affects only the application of subsection (1) of the statute. Truth shall remain an affirmative defense pursuant to section 18–13–105(2)[11]

---

**9.** On facial invalidation of overbroad statutes, Professor Tribe states:

A plausible challenge to a law as *void for overbreadth* can be made only when (1) the protected activity is a significant part of the law's target, and (2) there exists no satisfactory way of severing the law's constitutional from its unconstitutional applications so as to excise the latter clearly in a single step from the law's reach.

L. Tribe, *supra* note 6, § 12–27, at 1022 (emphasis in original).

**10.** Facial invalidation remains a viable solution to the Court, but its use has been restricted to those situations where it had no choice but to strike the law down for its inability to find a logical dividing line. *See* L. Tribe, *supra* note 6, § 12–28, at 1028–29. *Compare Brockett*, 472 U.S. at 504–05, 105 S.Ct. at 2802 (the Court only partially invalidated a state's obscenity statute by severing the ban on constitutionally protected materials that incite "normal" lust from the

ban on material that reaches genuinely obscene material) *with Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 967–68, 104 S.Ct. 2839, 2852–53, 81 L.Ed.2d 786 (1984) (the Court invalidated *in toto* an overbroad law that prohibited the solicitation of contributions by charitable organizations that did not use a certain percentage of their receipts for charitable purposes; the statute's fatal flaw was that it created an unnecessary risk of chilling free speech in *all* of its applications). *See also* Note, *The First Amendment Overbreadth Doctrine*, 83 Harv.L.Rev. 844, 891 (1970) (where a rule pertaining to a particular subject matter, such as defamation, "defines clearly protected activity, it might be used as a rule of excision rather than as a trigger for a holding of facial invalidity").

**11.** Section 18–13–105(2) disallows the truth defense for "libels tending to blacken the memory of the dead and libels tending to expose the natural defects of the living." The constitution-

and article II, section 10, of the Colorado Constitution.[12]

The statute remains valid to the extent that it penalizes libelous attacks under the facts of this case, where one private person has disparaged the reputation of another private individual. Accordingly, the judgment of the trial court is reversed and the case is remanded with instructions to reinstate the charge against the defendant.

QUINN, J., dissents.

ROVIRA, C.J., does not participate.

Justice QUINN dissenting:

Section 18–13–105, 8B C.R.S. (1986), criminalizes the publication or dissemination of a statement that tends to "impeach the honesty, integrity, virtue, or reputation or expose the natural defects of one who is alive, and thereby to expose [that person] to public hatred, contempt, or ridicule." I have no disagreement with the majority's partial invalidation of this statute to the extent that it attempts to criminalize the libel of public officials and public figures on matters of public concern. The instant prosecution does not involve the libel of a public official or a public figure, but rather is based on the alleged libel of a private person on essentially a matter of private concern. Because I am unable to accept the majority's construction of section 18–13–105 as related to the criminal libel of a private person, I dissent.

In the context of libel, the term "actual malice" means making a statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan,* 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). The majority rejects the defendant's claim that the lack of the "actual malice" requirement in section 18–13–105 renders the statutory proscription of criminal libel overbroad and concludes, instead, that "section 18–13–105 can be applied constitutionally to private defamers who 'knowingly publish or disseminate ...

any statement or object tending ... to impeach the honesty, integrity, virtue, or reputation' of a private individual." Maj. op. at 939. The majority reaches this conclusion by drawing primarily on *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) (opinion of Powell, J., announcing judgment of court), and *Rowe v. Metz,* 195 Colo. 424, 579 P.2d 83 (1978), both of which involved civil claims for defamation brought by a private person on a matter of private concern. I acknowledge that in matters of purely private concern, the free speech protections of the United States and Colorado constitutions are less stringent than in the case of speech involving a matter of public concern. *Dun & Bradstreet,* 472 U.S. at 759–60, 105 S.Ct. at 2945–46. We deal in this case, however, with the statutory definition of a crime and not with the conditions for recovery of civil damages for an alleged defamatory statement.

In considering whether a criminal statute is constitutionally overbroad, a court's task is to determine "whether the enactment reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). Because ambiguous statutory terminology causes citizens to " 'steer far wider of the unlawful zone' ... than if the boundaries of the forbidden areas were clearly marked," *Baggett v. Bullitt,* 377 U.S. 360, 372, 84 S.Ct. 1316, 1323, 12 L.Ed.2d 377 (1964) (quoting *Speiser v. Randall,* 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958), the vagueness of a statutory enactment affects overbreadth analysis. *Hoffman Estates,* 455 U.S. at 494, n. 6, 102 S.Ct. at 1191, n. 6. The mere fact that a private person may recover civil damages for libel without proof of actual malice affords no basis, in my view, on which to construct a rationale for criminal libel. In *Garrison v. Louisiana,* 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), for example, the United States Supreme Court re-

---

ality of these exceptions to the truth defense were not raised on appeal. We therefore decline to address that issue at this time.

**12.** *See supra* note 3.

versed the conviction of Garrison, the District Attorney of Orleans Parish, Louisiana, for criminal libel based on his disparaging remarks at a press conference that eight judges on the criminal court of the Parish were inefficient, lazy, had taken excessive vacations, and had hampered his efforts to enforce the vice laws. Garrison was prosecuted under a Louisiana criminal statute that defined criminal defamation as the malicious publication of anything that tends to "expose any person to hatred, contempt, or ridicule, or to deprive him of the benefit of public confidence or social intercourse," or "[t]o injure any person" in his "business or occupation." 379 U.S. at 65 n. 1, 85 S.Ct. at 211 n. 1. The Supreme Court held that the Louisiana statute failed to pass constitutional muster because it "directs punishment for true statements made with 'actual malice,'" as well as false statements without regard to whether the person making the statements knew the statements were false or acted in reckless disregard of whether they were true or false. 379 U.S. at 78, 85 S.Ct. at 217. In the course of its opinion, the Court remarked that "[c]hanging mores and the virtual disappearance of criminal libel prosecutions lend support to the observation that 'under modern conditions, when the rule of law is generally accepted as a substitute for private physical measures, it can hardly be urged that the maintenance of peace requires a criminal prosecution for private defamation.'" 379 U.S. at 69, 85 S.Ct. at 213 (quoting *Emerson, Toward a General Theory of the First Amendment*, 72 Yale L.J., 877, 924 (1963)).

Although the persons libeled by Garrison's remarks were public officials, I do not read the Court's opinion to turn the decision on that ground. Indeed, the Court observed in the course of its opinion that criminal sanctions "cannot be justified merely by the fact that defamation is evil or damaging to a person in ways that entitle [that person] to maintain a civil suit." 379 U.S. at 69–70, 85 S.Ct. at 213–14 (quoting Model Penal Code, Tent.Draft No. 13, 1961, § 250.7, Comments, at 44). A construction of statutory criminal libel that does not incorporate as essential elements

of that crime the falsity of the statement and knowledge of its falsity, or at a minimum reckless disregard of truth or falsity, will inexorably induce silence as an alternative to avoiding entrapment in the amorphous and uncertain zone of criminality created by the statute. *See Tollett v. United States*, 485 F.2d 1087 (8th Cir.1973) (statute punishing libelous, scurrilous, defamatory, or threatening statements, written on outside of envelope or postcard, stricken as unconstitutionally overbroad and vague); *Gottschalk v. State*, 575 P.2d 289 (Alaska 1978) (Alaska's criminal defamation statute invalidated as overbroad and unconstitutionally vague).

The majority's effort to narrow the sweep of the statutory proscription by judicial construction does not eliminate the vagueness and concomitant overbreadth inherent in the court's construction. The majority relies on the element of "knowingly" in section 18–13–105(1) as the basis for constitutionally applying the statute to a private defamation. The majority's construction of the term "knowingly," however, limits that element to the publication or dissemination of the statement and not to the falsity of the statement. Maj. op. at 939. Thus, a person arguably would be subject to criminal prosecution for the knowing publication or dissemination of a defamatory statement even though the statement was true and the person making the statement knew it to be true. While it might be appropriate to subject the defamer of a private person to civil liability in the absence of actual malice, *see Dun & Bradstreet*, 472 U.S. 749, 105 S.Ct. 2939; *Rowe*, 195 Colo. 424, 579 P.2d 83, it is quite another matter to subject that same defamer to a conviction for criminal libel in the absence of any proof whatever that the statement was false or that the person making the statement either knew it to be false or, at a minimum, acted with reckless disregard of its truth or falsity.

The majority also attempts to salvage the statute by emphasizing that "[t]ruth shall remain an affirmative defense pursuant to section 18–13–105(2) and art. II, sec. 10, of the Colorado Constitution." Maj. op.

at 940–41 (footnotes omitted). If truth is merely an affirmative defense to criminal libel, it would seem to follow that the prosecution is under no obligation to establish the falsity of the publication in the first instance. A prosecution for criminal libel for a true statement, even if made in the belief that it was false, suffers from the same constitutional infirmity as a prosecution for a false statement made without knowledge of its falsity or without reckless disregard of its truth or falsity. See Garrison, 379 U.S. at 78, 85 S.Ct. at 217. " 'Allowance of the defense of truth, with the burden of proving it on the defendant, does not mean that only false speech will be deterred.' The First Amendment requires that we protect some falsehood in order to protect speech that matters." Gertz v. Robert Welch, Inc., 418 U.S. 323, 340–41, 94 S.Ct. 2997, 3007–08, 41 L.Ed.2d 789 (1974) (quoting New York Times v. Sullivan, 376 U.S. at 279, 84 S.Ct. at 725).

In the course of relegating truth to the status of an affirmative defense, the majority declines to address subsection 18–13–105(2), which disallows the truth defense in libel "tending to expose the natural defects of the living." Maj. op. at 940, note 11. If this exception to the affirmative defense in the case of a libel tending to expose the natural defects of the living remains in effect, it follows that a person publishing a true statement that exposes the natural defects of a living person would nonetheless be subject to criminal prosecution in spite of the truth of the statement.

Rather than eliminating constitutional deficiencies that render the statutory definition of criminal libel constitutionally defective, the court's construction of the statute preserves those very deficiencies. In that respect, the court's efforts are strikingly similar to the judicial construction of criminal libel that was struck down in Ashton v. Kentucky, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966). Ashton was indicted for publishing a false and malicious publication that tended to degrade or injure three named persons. The trial court charged the jury that "criminal libel" is defined as "any writing calculated to create disturbances of the peace, corrupt

the public morals, or lead to any act, which, when done, is indictable," 384 U.S. at 198, 86 S.Ct. at 1409, and then added in its charge that both "falsity" and "malice" were essential elements of the offense. Id. In reversing Ashton's conviction because he was tried and convicted on the basis of a judicial construction of criminal libel that did not eliminate the vagueness and uncertainty in the elements of the crime, the Supreme Court stated:

> Here ..., we deal with First Amendment rights. Vague laws in any area suffer a constitutional infirmity. When First Amendment rights are involved, we look even more closely lest, under the guise of regulating conduct that is reachable by the police power, freedom of speech or of the press suffer. We said in Cantwell v. Connecticut, [310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) ], that such a law must be "narrowly drawn to prevent the supposed evil," 310 U.S., at 307 [60 S.Ct. at 905], and that a conviction for an utterance "based on a common law concept of the most general and undefined nature," id., at 308 [60 S.Ct. at 905], could not stand.

384 U.S. at 200–01, 86 S.Ct. at 1410–11 (footnotes omitted); see Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). If the jury charge in Ashton, which included falsity and malice as essential elements of criminal libel, was not sufficient to salvage Kentucky's definition of criminal libel from constitutional infirmity, I fail to see how the majority's construction of section 18–13–105, which does not incorporate either falsity or malice into the definition of criminal libel, can survive constitutional scrutiny. Indeed, it has been cogently observed that "with the advent of Garrison and Ashton, a strong argument may be made that there remains little constitutional validity to criminal libel laws." Tollett, 485 F.2d at 1094.

The absence of objective criteria in section 18–13–105, even with the majority's construction, creates a serious potential for selective enforcement, which is "both the hallmark and the vice of a vague criminal statute." Gottschalk, 575 P.2d at 295. It

strikes me as a dangerous precedent when the effect of a judicial construction results in setting a net "large enough to capture all possible offenders," and leaving it to courts "to step inside and say who could be rightfully detained, and who should be set at large." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 165, 92 S.Ct. 839, 845, 31 L.Ed.2d 110 (1972) (quoting *United States v. Reese*, 92 U.S. 214, 221, 23 L.Ed. 563 (1875)). I accordingly dissent.