The appellant, Jon Kelly South, appeals his convictions for harassing communications made to Mary Winfrey, a violation of § 13A-11-8, Code of Alabama 1975; assault in the third degree of Mary Thompson, a violation of § 13A-6-22; and burglary in the first degree of Mary Thompson's residence, a violation of §13A-7-5. The appellant appealed his convictions for harassing communications and assault from municipal court for the City of Mountain Brook to the Circuit Court for Jefferson County for a trial de novo. The trial court consolidated the appellant's appeal with the appellant's case based on a charge of burglary in the Circuit Court for Jefferson County. He was sentenced to 10 years in the state penitentiary. That sentence was split, and he was ordered to serve one year in prison, to be followed by two years' of probation for his burglary conviction. The trial court also sentenced the appellant to six months' hard labor in the City of Mountain Brook for his convictions for harassing communications and assault. Those sentences were to run concurrently with his sentence for burglary.
The state's evidence tended to show that on December 30, 1992, Mary Thompson, the appellant's estranged wife,[1] was at her mother's, Mary Winfrey's, house. Mary Winfrey testified that the appellant telephoned her residence numerous times that day and asked to speak with Thompson. Winfrey stated that the telephone calls from the appellant started before 7:00 a.m. and continued all day. She testified that the appellant called between 20 to 30 times and that she telephoned the police to report his calls. Officer Michael Glass, a Mountain Brook police officer, arrived at Winfrey's house at approximately 5:25 p.m. He testified that after he arrived the appellant telephoned several times. Officer Glass testified that he listened to one of the calls and that he spoke with the appellant. He identified himself to the appellant and advised him not to call back. Glass further testified that the appellant verbally abused Winfrey, calling her a "m_____f_____", and a "bitch."
Mary Thompson testified that she was married to the appellant for one year and two months. She testified that on May 14, 1993, the appellant, from whom she was separated, entered her house at 6 Montevallo Terrace. Thompson stated that the appellant hit her with his fist several times. She said that she suffered a swollen and black eye as a result of the beating, but she did not go to the hospital for treatment. Officer James Minton, a Mountain Brook police officer, *Page 294 
testified that he responded to a call from 6 Montevallo Terrace on May 14, 1993. He observed that Thompson's face was bruised and was black and blue.
Mary Thompson further testified that in January 1994, following her divorce from the appellant, she moved into a townhouse on Caldwell Avenue. She stated that on the night of March 30 the appellant "banged" on her door for 15 minutes, while he yelled "let me in, let me in." The appellant broke down Thompson's front door and ran upstairs to Thompson's bedroom, where Thompson was hiding. Thompson testified that the appellant hit her with his fist and that she fell back on the bed. Bernard Gates, a friend of Thompson's, testified that he was at Thompson's townhouse on March 30. He stated that he was in the bathroom when the appellant attacked Thompson. Gates testified that he heard the appellant hit Thompson and that he ran into the bedroom. The appellant left when he saw Gates.
 I
The appellant contends that his conviction for harassing communications violated his constitutional right to free speech. Specifically, he asserts that his communications with Mary Winfrey did not constitute "fighting words" and, therefore, would not constitute harassing communications under § 13A-11-8.
Alabama Code 1975, § 13A-11-8, provides:
 "(a)(1) Harassment. — A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he:
 "a. Strikes, shoves, kicks or otherwise touches a person or subjects him to physical contact; or
 "b. Directs abusive or obscene language or makes an obscene gesture towards another person.
"(2) Harassment is a Class C misdemeanor.
 "(b)(1) Harassing Communications. — A person commits the crime of harassing communications if, with the intent to harass or alarm another person, he:
 "a. Communicates with a person, anonymously or otherwise, by telephone, telegraph, mail or any other form of written or electronic communication, in a manner likely to harass or cause alarm; or
 "b. Makes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication; or
 "c. Telephones another person and addresses to or about such other person any lewd or obscene words or language.
 "Nothing in this section shall apply to legitimate business telephone communications.
 "(2) Harassing communications is a Class C misdemeanor."
In B.E.S. v. State, 629 So.2d 761 (Ala.Cr.App. 1993), this court addressed the scope of and the constitutionality of §13A-11-8(a)(1)b, as it applies to a conviction for harassment, when it stated:
 "Section 13A-11-8(a)(1)(b) clearly seeks to restrict speech, which, under the First Amendment, states have only limited authority to regulate. See Consolidated Edison Co. v. Public Service Comm'n, 447 U.S. 530, 540, 100 S.Ct. 2326, 2335, 65 L.Ed.2d 319 (1980) ('[w]here a government restricts the speech of a private person, the state action may be sustained only if the government can show that the regulation is a precisely drawn means of serving a compelling state interest'). However, '[g]overnment regulation of speech has been allowed when the purpose of the statute was to proscribe "fighting words." ' J. Nowak R. Rotunda, Constitutional Law § 16.37 (4th ed. 1991). As the United States Supreme Court stated in Chaplinsky v. New Hampshire, 315 U.S. 568, 57172, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942):
 " 'There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting words." ' (Footnote omitted [in B.E.S.].)
 "In order to bring § 13A-11-8(a)(1)(b) within the range of constitutionally permitted legislation, we have held that the *Page 295 
words 'abusive or obscene language,' as used in this statute, are to be ' "interpreted narrowly to apply only to 'fighting words.' " ' Robinson v. State, 615 So.2d 112, 113 (Ala.Cr.App. 1992) (applying Swann v. City of Huntsville, 455 So.2d 944, 950 (Ala.Cr.App. 1984), and Mosley v. City of Auburn, 428 So.2d 165, 166 (Ala.Cr.App. 1982), superseded on other grounds, Mason v. City of Vestavia Hills, 518 So.2d 221 (Ala.Cr.App. 1987), wherein this Court had previously interpreted in the same manner the same words contained in § 13A-11-7(a)(3), the disorderly conduct statute). See also Shinault v. City of Huntsville, 579 So.2d 696, 699-700 (Ala.Cr.App. 1991) (Bowen, J., concurring in result). . . .
 " 'Fighting words' are 'personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction.' Cohen v. California, 403 U.S. 15, 20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284 (1971). The utterance itself must 'tend to incite an immediate breach of the peace.' Chaplinsky v. New Hampshire, 315 U.S. at 572, 62 S.Ct. at 769. See also Lewis v. City of New Orleans, 415 U.S. 130, 132, 94 S.Ct. 970, 972, 39 L.Ed.2d 214 (1974). 'It is not enough that [the words] merely arouse anger or resentment,' Skelton v. City of Birmingham, 342 So.2d 933, 937
(Ala.Cr.App.), remanded on other grounds, 342 So.2d 937 (Ala. 1976), or that the words are deemed 'a socially unacceptable mode of communication,' State v. Authelet, 120 R.I. 42, 385 A.2d 642, 649 R.I. 1978). It is clear that the words must 'by their very utterance provoke a swift physical retaliation and incite an immediate breach of the peace.' Skelton v. City of Birmingham
342 So.2d at 936-37."
629 So.2d at 763-64.
It is clear that B.E.S. applies to those fact situations that involve face-to-face harassment that might provoke "swift physical retaliation." (Cf. Conkle v. State, 677 So.2d 1211
(Ala.Cr.App. 1995)).
The appellant specifically questions the constitutionality of § 13A-11-8(b) and contends that the "fighting words" standard should apply to harassing communications as well as harassment. This is an issue of first impression in Alabama and this is, therefore, our first opportunity to consider whether "fighting words" are required to sustain a conviction under §13A-11-8(b). The State of Kentucky addressed this issue inYates v. Commonwealth, 753 S.W.2d 874 (Ky.App. 1988). The Court of Appeals of Kentucky stated:
 "Appellant questions the constitutionality of KRS 525.080 which states:
 "(1) A person is guilty of harassing communications when with intent to harass, annoy or alarm another person he:
 "(a) Communicates with a person, anonymously or otherwise, by telephone, telegraph, mail or any other form of written communication in a manner which causes annoyance or alarm and serves no purpose of legitimate communication; or
 "(b) Makes a telephone call, whether or not conversation ensues, with no purpose of legitimate communication.
 "(2) Harassing communications is a Class B misdemeanor.
". . . .
 ". . . . We do not have to 'add' the phrase 'fighting words' to KRS 525.080 to make it constitutional. In fact, due to the nature of the statute that phrase would be of no consequence.
 "KRS 525.080 pertains to telephone and written communication. It does not concern face to face communication in a public place where confrontations could arise, but rather it relates to protecting one's right to privacy. The First Amendment protects the right to free speech. However, there is a difference between communication in a public forum and the type which this statute regulates. This form of communication intrudes upon a justifiable privacy interest of the recipient and therefore, this right to communicate must be considered in light of a person's right 'to be left alone.' Rowan v. United States Post Office Dept., 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970). No individual whose intention is to annoy, alarm, or harass has the right to *Page 296 
impose his ideas on an unwilling listener not in a public forum.
 "Appellant also argues that KRS 525.080 is unconstitutionally vague and overbroad. The fact that the statute is not limited to 'fighting words' does not render it overbroad. As stated above, that phrase has no bearing on this statute. In addition, insulting or 'fighting' words are not the only speech beyond the scope of the constitution; included are libelous, the profane, and the lewd and obscene. Chaplinsky [v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942)]. Regardless of that point, KRS 525.080
does not regulate speech but rather intentional use of private communication to annoy, alarm, or harass the receiver which serves no purpose of legitimate communication.
 "The statute is not overbroad nor does it prohibit legitimate free speech but rather it punishes the manner used to convey the communication. KRS 525.080(1)(a) specifically states 'in a manner which causes . . .' and it does not even matter if the conversation ever ensues in (1)(b). It is the conduct that is controlled; the manner used which intrudes on an individual's right to be left alone and not the thoughts or ideas conveyed. Freedom of speech does not include freedom to convey messages when, where, and how one chooses. That right must be adjusted to the rights of others. Breard v. Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951)."
753 S.W.2d at 875-876.
We adopt the reasoning of the Court of Appeals of Kentucky inYates. Alabama's statute, like the Kentucky statute in Yates, regulates the intentional use of a private communication with the intent to harass or alarm another person. In this case, the appellant's act of calling Mary Winfrey to harass or to annoy her is the basis of his conviction.
Further, this statute protects the recipient from unwanted or offensive communications.
 "Preserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value. Our decisions reflect no lack of solicitude for the right of an individual 'to be let alone' in the privacy of the home, 'sometimes the last citadel of the tired, the weary, and the sick.' [Gregory v. Chicago, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969)] Id., at 125, 89 S.Ct. at 954
(Black, J., concurring). See generally Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); Rowan v. United States Post Office Dept., 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736
(1970); FCC v. Pacifica Foundation, 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978); Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)."
Carey v. Brown, 447 U.S. 455, 471, 100 S.Ct. 2286, 2295,65 L.Ed.2d 263, 276 (1980).
The appellant's conviction for harassing communications did not violate his constitutional right to free speech. The "fighting words" standard as applied to harassment under §13A-11-8(a)(1)b does not apply to "harassing communications" prohibited under § 13A-11-8(b).
 II
The appellant next contends that the state failed to present a prima facie case of burglary. Specifically, he contends that he did not unlawfully enter the premises because, he says, he had a right to enter the victim's townhouse at 2726 Caldwell Avenue on March 30, 1994.
 "In Alabama, '[b]urglary, like trespass, is an offense against the possession, and hence the test for the purpose of determining in whom the ownership of the premises should be laid in an indictment is not the title, but the occupancy or possession at the time the offense was committed.' Hamilton v. State, 283 Ala. 540, 545, 219 So.2d 369, 374, cert. denied, 396 U.S. 868, 90 S.Ct. 134, 24 L.Ed.2d 121 (1969) (quoting Fuller v. State, 28 Ala. App. 28, 30, 177 So. 353, 354 (1937)). 'A person "enters or remains unlawfully" in or upon premises when he is not licensed, invited or privileged to do so.' Ala. Code 1975, § 13A-7-1(4). Under Alabama law, a person who is licensed or privileged to enter premises cannot commit criminal trespass or burglary. *Page 297 Johnson v. State, 473 So.2d 607, 609
(Ala.Cr.App. 1985)."
White v. State, 587 So.2d 1218, 1223 (Ala.Cr.App. 1990), aff'd,587 So.2d 1236 (Ala. 1991), cert. denied, 502 U.S. 1076,112 S.Ct. 979, 117 L.Ed.2d 142 (1992).
The appellant presented a lease that showed the appellant as the lessee and Thompson as the lessor. The lease was signed by the appellant and Mary Thompson and the date of execution was January 20, 1994. Thompson testified that she purchased the townhouse in January 1994. She further testified that the appellant forced her to complete and sign a standard lease form after the incident on March 30. Conflicting evidence presents a jury question. Smith v. State, 583 So.2d 990 (Ala.Cr.App.), cert. denied, 583 So.2d 993 (Ala. 1991). "The jury is the judge of the facts, the demeanor of the witnesses, and their testimony." Finch v. State, 445 So.2d 964 (Ala.Cr.App. 1983). Thompson further testified that the appellant had slept at the townhouse on several occasions but that he did not live there. The record reflects that the appellant had his own apartment and that Thompson and the appellant were divorced; therefore, at the time of this incident the appellant was not licensed, invited, or privileged to enter the premises. There was sufficient evidence to support the jury verdict finding the appellant guilty of for burglary in the first degree in this case.
 III
The appellant contends that the state did not present sufficient evidence to support his conviction for assault in the third degree. Alabama Code 1975, § 13A-6-22, provides:
 "(a) A person commits the crime of assault in the third degree if:
 "(1) With intent to cause physical injury to another person, he causes physical injury to any person; or
 "(2) He recklessly causes physical injury to another person; or
 "(3) With criminal negligence he causes physical injury to another person by means of a deadly weapon or a dangerous instrument; or
 "(4) With intent to prevent a peace officer from performing a lawful duty, he causes physical injury to any person."
Specifically, he contends that the state failed to show that the victim suffered a physical injury, which is an element of assault in the third degree. Physical injury is defined in § 13A-1-2(8), Code of Alabama 1975, as "impairment of physical condition or substantial pain." The victim in this case testified that she suffered from a "black eye" as a result of the appellant striking her with his fist on May 14, 1993. "The offense of assault in the third degree is the least serious of all assault statutes and is designed to encompass those assaults in which the least degree of physical injury is inflicted." Eubanks v. State, 611 So.2d 448, 450
(Ala.Cr.App. 1992). There was sufficient evidence of physical injury in this case.
For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
PATTERSON and LONG, JJ., concur.
McMILLAN, J., recuses and COBB, J., not sitting.
[1] Mary Thompson and the appellant were married but separated at the time of the assault and the harassing communications. They were divorced, however, at the time of the burglary. *Page 816