953 So.2d 434 (2006)
CITY OF MONTGOMERY
v.
Thyno ZGOUVAS.
CR-05-0039.
Court of Criminal Appeals of Alabama.
September 29, 2006.
*436 Stephanie Smithee, Montgomery, for appellant.
William R. Blanchard, Montgomery, for appellee.
David Gespass and Thomas B. Diasio, Birmingham, for amicus curiae American Civil Liberties Union of Alabama and American Civil Liberties Union, in support of the appellee.
COBB, Judge.
Thyno Zgouvas was charged in Montgomery Municipal Court with violating Ordinance No. 1-9 of the City of Montgomery, which makes the commitment of a misdemeanor as defined by the laws of the State of Alabama within the city limits an offense against the City. Specifically, Zgouvas was accused of making harassing communications in violation of § 13A-11-8(b), Ala.Code 1975, which states:
"(b)(1) Harassing Communications. A person commits the crime of harassing communications if, with intent to harass or alarm another person, he or she does any of the following:
"a. Communicates with a person, anonymously or otherwise, by telephone, telegraph, or any other form of written or electronic communication, in a manner likely to harass or cause alarm.
"b. Makes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication.
"c. Telephones another person and addresses to or about such other person any lewd or obscene words or language.
"Nothing in this section shall apply to legitimate business telephone communications.

*437 "(2) Harassing communications is a Class C misdemeanor."
Zgouvas was convicted in Montgomery Municipal Court and appealed his conviction to the Montgomery Circuit Court pursuant to § 12-14-70, Ala.Code 1975. Zgouvas filed a motion to dismiss the charge, alleging that § 13A-11-8(b)(1), Ala.Code 1975, is vague and overbroad. The trial court granted Zgouvas's motion, and the City of Montgomery now appeals the trial court's order granting Zgouvas's motion.
Our Supreme Court recently reiterated the standard of review when determining whether a statute is constitutional:
"This Court `"should be very reluctant to hold any act unconstitutional."' Ex parte D.W., 835 So.2d 186, 189 (Ala. 2002) (quoting Ex parte Boyd, 796 So.2d 1092, 1094 (Ala.2001)). `[I] n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government.' Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944) (emphasis added). This is so, because `it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.' 246 Ala. at 9, 18 So.2d at 815 (emphasis added)."
McInnish v. Riley, 925 So.2d 174, 178 (Ala.2005).
Before making any determination whether § 13A-11-8(b)(1)a is constitutional, a court must first determine whether Zgouvas has standing to challenge the constitutionality of the statute.
"`Not all controversies . . . are justiciable. Justiciability is a compound concept, composed of a number of distinct elements. Chief among these elements is the requirement that a plaintiff have "standing to invoke the power of the court in his behalf."' Ex parte State ex rel. James, 711 So.2d 952, 960 (Ala.1998) (quoting Ex parte Izundu, 568 So.2d 771, 772 (Ala.1990)). `Standing . . . turns on "whether the party has been injured in fact and whether the injury is to a legally protected right."' State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1027 (Ala.1999)(quoting Romer v. Board of County Comm'rs of the County of Pueblo, 956 P.2d 566, 581 (Colo.1998)(Kourlis, J., dissenting)).
"`When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction. Barshop v. Medina County Underground Water Conservation District, 925 S.W.2d 618, 626 (Tex.1996) ("Standing is a necessary component of subject matter jurisdiction"). See also Raines v. Byrd, 521 U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997); Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); United States v. Hays, 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) ("`standing "is perhaps the most important of [the jurisdictional] doctrines"'"); National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) ("Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation."); Romer v. Board of County Comm'rs of the County of Pueblo, supra, 956 P.2d at 585 ("standing is a jurisdictional prerequisite to every case and may be raised at any stage of the proceedings") (Martinez, J., dissenting); Cotton v. Steele, 255 Neb. 892, 587 N.W.2d 693 (1999). But see Hertzberg *438 v. Zoning Bd. of Adjustment of the City of Pittsburgh, 554 Pa. 249, 721 A.2d 43 (1998) (standing is not jurisdictional).'
"State v. Property at 2018 Rainbow Drive, 740 So.2d at 1028."
J.L.N. v. State, 894 So.2d 751, 753 (Ala. 2004).
An exception to the aforementioned rule exists for questions of overbreadth in First Amendment speech-or-expression cases. As the United States Supreme Court has explained:
"It is well established that in the area of freedom of expression an overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable. See, e.g., City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 798-799, and n. 15, 104 S.Ct. 2118, 2125, and n. 15, 80 L.Ed.2d 772 (1984); Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc., 482 U.S. 569, 574, 107 S.Ct. 2568, 2572, 96 L.Ed.2d 500 (1987). This exception from general standing rules is based on an appreciation that the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court. See, e.g., New York v. Ferber, 458 U.S. 747, 772, 102 S.Ct. 3348, 3362, 73 L.Ed.2d 1113 (1982); Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985). Thus, the Court has permitted a party to challenge an ordinance under the overbreadth doctrine in cases where every application creates an impermissible risk of suppression of ideas, such as an ordinance that delegates overly broad discretion to the decisionmaker, see Thornhill v. Alabama, 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093 (1940); Freedman v. Maryland, 380 U.S. 51, 56, 85 S.Ct. 734, 737, 13 L.Ed.2d 649 (1965); Taxpayers for Vincent, 466 U.S., at 798, n. 15, 104 S.Ct., at 2125, n. 15, and in cases where the ordinance sweeps too broadly, penalizing a substantial amount of speech that is constitutionally protected, see Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); Jews for Jesus, 482 U.S., at 574-575, 107 S.Ct., at 2572."
Forsyth County, Ga. v. Nationalist Movement, 505 U.S. 123, 129-30, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992).
Thus, Zgouvas may challenge the constitutionality of the statute in question based on the overbreadth doctrine. However, because the vagueness doctrine is a separate and distinct concept, we must consider whether Zgouvas has standing to challenge the statute based on vagueness. A review of Zgouvas's motion to dismiss, the transcript of the hearing before the trial judge regarding Zgouvas's motion, and Zgouvas's brief to this Court indicates that Zgouvas is not challenging the constitutionality of the statute as it applies to him, but instead is basing his challenge on hypothetical situations involving "a person who uses the telephone to warn another of a fire, flood, storm or other apparent imminent hazard." (Appellee's brief, p. 12).[1] *439 In fact, Zgouvas challenges this statute as being vague based on its use of the term "alarm."
However, upon reviewing the written deposition given by the complainant, we conclude that this is obviously a situation where Zgouvas "communicate[d] . . . in a manner likely to harass. . . ." § 13A-11-8(b)(1)a. The complainant alleged that she assisted Zgouvas while he was making a purchase for his girlfriend in the store where she was employed. The item apparently had to be ordered. The next day Zgouvas telephoned the store, and the complainant informed him the item had not arrived. Zgouvas then told her that he was coming by the store later to give her something. When he arrived, Zgouvas presented a bouquet of flowers and a letter for the complainant. Two days later Zgouvas telephoned the store repeatedly, and the complainant's coworkers took messages for her. That evening Zgouvas appeared at the store inquiring of the complainant about the status of the item ordered. In the conversation that ensued, the complainant told that Zgouvas that things needed to remain professional between the two as she had a boyfriend and Zgouvas apparently had a girlfriend. The next day the complainant telephoned Zgouvas and informed him that the item he had ordered had arrived. When Zgouvas arrived at the store to collect the item, he presented the complainant with a bottle of vodka, a bottle of cranberry juice, and another letter. The complainant later telephoned Zgouvas and told him not to call her or send her gifts again and that if he shopped in the store again someone else would have to assist him. Zgouvas then told the complainant to tell her boyfriend that "if he ever hurt [her] there was a Greek man following [her] around Montgomery trying to date [her]." (C. 10.) The complainant alleges that the following week Zgouvas followed her as she was leaving the shopping center where she is employed. A week later Zgouvas sent the complainant a large, expensive bouquet of flowers and a DVD of the movie Serendipity. The complainant also alleges that on numerous occasions Zgouvas would telephone her place of business and would hang up when someone answered the telephone.
These alleged acts, if true, clearly indicate that, if true, Zgouvas's apparent intent was to harass, not to alarm, the complainant. Thus Zgouvas's alleged actions fall squarely within the parameters of the conduct the legislature intended to thwart by the adoption of section. In order to raise a constitutional challenge regarding vagueness, Zgouvas is forced to assert hypothetical situations that are in no way associated with the facts surrounding the case against him. Thus, Zgouvas does not have standing to challenge the constitutionality of § 13A-11-8(b) based upon the vagueness doctrine.
We now turn to the question of whether § 13A-11-8(b) is overbroad. "[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when `judged in relation to the statute's plainly legitimate sweep.'" City of Chicago v. Morales, 527 U.S. 41, 52, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). For a statute to be invalidated on its face based on the overbreadth doctrine, the overbreadth must be substantial. Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc., 482 U.S. 569, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987). "Even *440 though the challenge be based on the First Amendment, the overbreadth doctrine is not casually employed. `Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, we have recognized that the overbreadth doctrine is "strong medicine" and have employed it with hesitation, and then "only as a last resort."'" Los Angeles Police Dep't v. United Reporting Pub. Corp., 528 U.S. 32, 39, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999) (quoting New York v. Ferber, 458 U.S. 747, 769, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), quoting in turn Broadrick, 413 U.S. at 613, 93 S.Ct. 2908).
In its order, the Montgomery Circuit Court found that § 13A-11-8(b)(1)a was "both vague and overbroad in contravention of the First, Fifth, and Fourteenth Amendments of the United States Constitution." (C. 26-27.) Previously, this Court has upheld the constitutionality of § 13A-11-8(b) and § 13A-11-8(a)(1)b, Ala. Code 1975. In South v. City of Mountain Brook, 688 So.2d 292 (Ala.Crim.App.1996), the defendant was convicted of making harassing communications. The evidence showed that South telephoned his estranged wife at her mother's house between 20 and 30 times in one day and during the telephone calls referred to his wife in profane terms. On appeal, South challenged the constitutionality of § 13A-11-8, Ala.Code 1975, because, he said, his communications to his wife in those telephone calls did not constitute "fighting words." In upholding the constitutionality of this statute, Judge Taylor, writing for this Court, stated:
"The appellant specifically questions the constitutionality of § 13A-11-8(b) and contends that the `fighting words' standard should apply to harassing communications as well as harassment. This is an issue of first impression in Alabama and this is, therefore, our first opportunity to consider whether `fighting words' are required to sustain a conviction under § 13A-11-8(b). The State of Kentucky addressed this issue in Yates v. Commonwealth, 753 S.W.2d 874 (Ky.App.1988). The Court of Appeals of Kentucky stated:
"`Appellant questions the constitutionality of KRS 55.080 which states:
"`(1) A person is guilty of harassing communications when with intent to harass, annoy or alarm another person he:
"`(a) Communicates with a person, anonymously or otherwise, by telephone, telegraph, mail or any other form of written communication in a manner which causes annoyance or alarm and serves no purpose of legitimate communications; or
"`(b) Makes a telephone call, whether or not conversation ensues, with no purpose of legitimate communication.
"`(2) Harassing communications is a Class B misdemeanor.
"`. . . .
"`. . . . We do not have to "add" the phrase "fighting words" to KRS 525.080 to make it constitutional. In fact due to the nature of the statute that phrase would be of no consequence.
"`KRS 525.080 pertains to telephone and written communication. It does not concern face to face communication in a public place where confrontations could arise, but rather it relates to protecting one's right to privacy. The First Amendment protects the right to free speech. However, there is a difference between communication in a public forum and the type which this statute regulates. This form of communication intrudes *441 upon a justifiable privacy interest of the recipient and therefore, this right to communicate must be considered in light of a person's right "to be left alone." Rowan v. United States Post Office Dept., 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970). No individual whose intention is to annoy, alarm, or harass has the right to impose his ideas on an unwilling listener not in a public forum.
"`Appellant also argues that KRS 525.080 is unconstitutionally vague and overbroad. The fact that the statute is not limited to "fighting words" does not render it overbroad. As stated above, that phrase has no bearing on this statute. In addition, insulting or "fighting" words are not the only speech beyond the scope of the constitution; included are libelous, the profane, and the lewd and obscene. Chaplinsky [v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942)]. Regardless of that point, KRS 525.080 does not regulate speech but rather intentional use of private communication to annoy, alarm, or harass the receiver which serves no purpose of legitimate communication.
"`The statute is not overbroad nor does it prohibit legitimate free speech but rather it punishes the manner used to convey the communication. KRS 525.080(1)(a) specifically states "in a manner which causes . . ." and it does not even matter if the conversation ever ensues in (1)(b). It is the conduct that is controlled; the manner used which intrudes on an individual's right to be left alone and not the thoughts or ideas conveyed. Freedom of speech does not include freedom to convey messages when, where, and how one chooses. That right must be adjusted to the rights of others. Breard v. Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951).'
"753 S.W.2d at 875-876.
"We adopt the reasoning of the Court of Appeals of Kentucky in Yates. Alabama's statute, like the Kentucky statute in Yates, regulates the intentional use of a private communication with the intent to harass or alarm another person. In this case, the appellant's act of calling Mary Winfrey to harass or annoy her is the basis of his conviction.
"Further, this statute protects the recipient from unwanted or offensive communications.

"`Preserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value. Our decisions reflect no lack of solicitude for the right of an individual "to be let alone" in the privacy of the home, "sometimes the last citadel of the tired, the weary, and the sick." [Gregory v. Chicago, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969)] Id., at 125, 89 S.Ct. at 954 (Black, J., concurring). See generally Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); Rowan v. United States Post Office Dept., 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970); FCC v. Pacifica Foundation, 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978); Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).'

"Carey v. Brown, 447 U.S. 455, 471, 100 S.Ct. 2286, 2295, 65 L.Ed.2d 263, 276 (1980).
"The appellant's conviction for harassing communications did not violate his constitutional right to free speech. The *442 `fighting words' standard as applied to harassment under § 13A-11-8(a)(1)b does not apply to `harassing communications' prohibited under § 13A-11-8(b)."
688 So.2d at 295-96 (emphasis added).
Similarly, in Brooks v. City of Birmingham, 485 So.2d 385 (Ala.Crim.App.1985), the defendant was convicted of making harassing communications in violation of § 13A-11-8(a)(1)b, Ala.Code 1975. The evidence showed that Brooks tailgated a motorist, then pulled alongside the motorist, rolled down her automobile window, and shouted obscenities at the motorist. On appeal, Brooks challenged the constitutionality of § 13A-11-8(a)(1)b as being vague and overbroad. This court opined:
"It is argued in brief of counsel for appellant that § 13A-11-8 `is vague and overbroad and is therefore in direct contradiction to the First and Fourteenth Amendments to the Constitution of the United State of America.' We do not agree with this contention of appellant nor with his argument to the effect that his contention is supported by Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), and N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). We are of the opinion that the language used by defendant, according to the testimony of the alleged victim, constituted `fighting words' and/or `those which by their very utterance inflict injury or tend to incite any immediate breach of the peace' and are within the Constitutional right of the Legislature to proscribe, as held in Chaplinsky v. New Hampshire, 315 U.S. 568, 571, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), and Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). We conclude that none of the cases of the Supreme Court cited by appellant supports the issue presented by appellant as to the unconstitutionality of Code of Alabama, § 13A-11-8(a)."
485 So.2d at 387. Although South and Brooks are factually distinguishable from the instant case, this Court's reasoning in those cases is applicable here.
In its order, the Montgomery Circuit Court found that § 13A-11-8(b)(1)a was both vague and overbroad, although the circuit court's order does not state the basis for the court's reasoning that the statute was vague and overbroad. However, in his motion and during a hearing on the motion, Zgouvas argued that the statute in question was vague and overbroad because of its use of the word "alarm."
As the Alabama Supreme Court has aptly stated:
"In passing on the validity of a statute it must be remembered that the legislature, except insofar as specifically limited by the state and federal constitutions, is all-powerful in dealing with matters of legislation; that a legislative act is presumed to be constitutional and valid, and all doubts are to be resolved in favor of its validity; that a statute, if reasonably possible, must be so construed as to sustain its validity and will not be declared invalid unless the court is clearly convinced that it cannot stand; that all questions of propriety, wisdom, necessity, utility and expediency in the enactment of laws are exclusively for the legislature, and are matters with which the courts have no concern."
Jansen v. State ex rel. Downing, 273 Ala. 166, 168, 137 So.2d 47, 48 (1962). This Court is charged with the responsibility "`to give effect to the legislative intent whenever that intent is manifested.'" Ex parte Gadsden Reg'l Med. Ctr., 904 So.2d 234, 236 (Ala.2004), quoting Bean Dredging, L.L.C. v. Alabama Dep't of Revenue, 855 So.2d 513, 517 (Ala.2003). "`[W]hen a term is not defined in a statute, the commonly *443 accepted definition of the term should be applied.' . . . Also, `we must give the words in a statute their plain, ordinary, and commonly understood meaning, and where plain language is used we must interpret it to mean exactly what it says.'" Ex parte Gadsden Reg'l Med. Ctr., 904 So.2d at 236, quoting Bean Dredging, 855 So.2d at 517.
Chapter 11 of Section 13A of the Code of Alabama does not define "alarm." Merriam-Webster's Collegiate Dictionary 28-29 (11th ed.2005), provides four definitions for the noun "alarm." The only definition that would be applicable to the use of "alarm" in § 13A-11-8(b)(1)a. is "sudden sharp apprehension and fear resulting from the perception of imminent danger." Zgouvas argues that the use of the word "alarm" in § 13A-11-8(b)(1)a. "make[s] it criminal to forecast a storm, predict political trends, or warn against epidemics of illness." (Appellee's brief at p. 8). We disagree. To give the statute the effect that was obviously intended by the legislature the word "alarm" cannot be considered in a vacuum but must be considered in the context of the phrase of which it is a part: "in a manner likely to harass or cause alarm." When considering the word in context of the entire section of this statute, and particularly the phrase containing "alarm," it is obvious that the legislature intended the word alarm to only apply to situations where the speaker's words or actions cause fear of imminent danger, and that danger in some way finds its impetus with the speaker. The legislature did not intend for the term "alarm" as used in § 13A-11-8(b)(1)a. to encompass instances when one warns another of danger from a storm or illness. This is something that "men of common intelligence" can discern.
Furthermore, § 13A-11-8(b)(1) requires that the perpetrator act "with intent to harass or alarm another person." Thus, a trier of fact must determine the intentions of the actor. As amicus curiae American Civil Liberties Union notes in its brief, the United States Supreme Court has upheld state statutes that prohibit or ban acts or speech that are carried out with the intent to intimidate. See, Virginia v. Black, 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). As the City of Montgomery notes, whether Zgouvas intended to harass the complainant was a question for the jury.
This Court has previously held that a specific-intent requirement can ameliorate vagueness and overbreadth problems. Culbreath v. State, 667 So.2d 156 (Ala.Crim.App.1995), abrogated on other grounds by Hayes v. State, 717 So.2d 30 (Ala.Crim.App.1997). The crux of § 13A-18-11(b) is whether the actor or speaker intends to harass or alarm another. Without this intent, his speech and actions are lawful. We therefore find that the specific-intent requirement contained § 13A-11-8(b)(1)a. cures any potential overbreadth concerns.[2]
Because § 13A-11-8(b)(1), Ala.Code 1975, is not overbroad, we reverse the *444 order of the Montgomery Circuit Court dismissing the charges against Zgouvas and remand this matter for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, P.J., and SHAW and WISE, JJ., concur. BASCHAB, J., concurs in the result, with opinion.
BASCHAB, Judge, concurring in the result.
The majority reverses the trial court's order dismissing § 13A-8-11(b)(1), Ala. Code 1975, as unconstitutionally vague and overbroad on the ground that the appellee does not have standing to challenge the statute on vagueness grounds and on the ground that the statute is not unconstitutionally overbroad. I am compelled to concur in the result for several reasons.
First, the majority presents a summary of the "facts" of the case. During the hearing, the only references to the facts of the case were the following:
"[DEFENSE COUNSEL]: . . . He'sessentially, he's charged with, believe it or not, with sending flowers and making telephone calls to a woman he was interested in. And she for whatever reason on her own decided to charge him with a crime. . . .
". . . .
"[PROSECUTOR:] Furthermore, whether his intent was to alarm or harass her is a jury question. You know, of course, the facts deal a little bit more than just, you know, he's called her a few times and sent her a gift."
(R. 3, 6.) The majority presents a much more detailed statement of facts, apparently relying on a deposition the victim signed when law enforcement officers investigated the case. It also states that
"[a] review of Zgouvas's motion to dismiss, the transcript of the hearing before the trial judge regarding Zgouvas's motion, and Zgouvas's brief to this Court indicates that Zgouvas is not challenging the constitutionality of the statute as it applies to him, but instead is basing his challenge on hypothetical situations involving `a person who uses the telephone to warn another of a fire, flood, storm or other apparent imminent hazard.'"
953 So.2d at 438. However,
"`[a]ssertions in an unverified motion are bare allegations and cannot be considered as evidence or proof of the facts alleged.' Blount v. State, 557 So.2d 1333 (Ala.Crim.App.1989); see also, Similton v. State, 672 So.2d 1363 (Ala.Crim.App. 1995)."
McCollum v. State, 678 So.2d 1210, 1213 (Ala.Crim.App.1995). Thus, defense counsel's assertions in the motion to dismiss did not constitute evidence. Further, the victim's deposition, which was not admitted during the hearing on the motion to dismiss, is hearsay and cannot be considered as evidence. Finally, defense counsel's assertions during the hearing on the motion did not constitute evidence. See State v. Woodruff, 460 So.2d 325, 327 (Ala.Crim. App.1984). Therefore, it is improper for this court to make a determination that the appellee does not have standing to raise a vagueness challenge based on facts that were not properly presented to the trial court.
Second, I note that, based on the scant facts presented during the hearing, it appears that the appellee did not generally have standing to challenge the constitutionality of § 13A-8-11(b)(1), Ala.Code 1975. However, the City did not raise the issue of standing in the trial court. As we noted in Snavely v. City of Huntsville, 785 So.2d 1162, 1166 n. 1 (Ala.Crim.App.2000):

*445 "Based on the facts of this case, Snavely did not have standing to make this argument. However, the State did not raise a claim at trial or on appeal that Snavely lacked standing to challenge the constitutionality of § 32-5-192, Ala.Code 1975. Thus, the State waived any claim that Snavely lacked standing. See State v. Ivey, 709 So.2d 502, 507 (Ala.Cr.App.1997)."
See Cook v. State, 574 So.2d 905, 908 (Ala. Crim.App.1990) (holding that "the issue of standing was not raised by the State at trial and has therefore been waived"). See also City of Mobile v. Weinacker, 720 So.2d 953 (Ala.Civ.App.1998). Therefore, the City waived any claim that the appellee lacked standing, and it is not appropriate for this court to rely on that ground to reverse the trial court's decision.
Third, I do not agree with all of the majority's analysis concerning the appellee's argument that the statute is overbroad. Nevertheless, I agree with its ultimate conclusion that the statute is not overbroad.
For these reasons, I respectfully concur in the result.
NOTES
[1] In his motion to the trial court, Zgouvas argued:

"The ordinance/statute fails to establish reasonably clear guidelines for law enforcement officials and triers of fact to prevent arbitrary and discriminatory enforcement. Under the language of this statute, police, prosecuting attorneys, judges, and juries are permitted to pursue their personal predilections in enforcing the law. Due process does not countenance this result."
(C. 23.) During the hearing, Zgouvas used as an example of "a newscaster [getting] on the TV and [saying] there's a bomb in the building downtown in a manneran alarming manner intended to cause alarm." (R. 4.)
[2] In support of the argument that § 13A-11-8(b)(1) is unconstitutional, Zgouvas cites a Colorado case, Bolles v. People, 189 Colo. 394, 541 P.2d 80 (1975). In Bolles, the Colorado Supreme Court held that Colorado's harassment statute, which contained language very similar to Alabama's harassing communications statute, was unconstitutionally overbroad. We note that "[t]he opinions of our sister states are merely persuasive authority, and this Court is not bound by the doctrine of stare decisis to follow such decisions." Fox v. Hunt, 619 So.2d 1364, 1367 (Ala.1993). We find Bolles not to be persuasive because the Colorado Supreme Court did not consider the ameliorating effect of the specific-intent requirement of its statute.